Nash, J.
 

 We do not deem it necessary to give any construction of the deed of 1822, as to the rights of the husband, Thomas B. Williams, or of the plaintiff under it, whether property can or cannot be conveyed to a
 
 feme covert
 
 to hold to her separate use, Avithout the intervention of a trustee. It is sufficient for the present • purpose to say, it was, with the parties concerned, a doubtful question. The defendant purchased the .negroes from the husband, and instituted a suit to recover
 
 *209
 
 them. While the title is thus in contestation, or while he' is claiming them as his property, and the plaintiff holding" them as hers, they agree, in order to put an end to the dispute, to divide the property. The compromise of a doubtful right, fairly entered into, with due deliberation, will be sustained in a Court of Equity. It is reasonable and proper it should be so ; parties must be at liberty to settle their own controversies, by dividing the property in controversy, and public policy upholds the right.
 
 1st vol. Story’s Eq.
 
 134,
 
 sec.
 
 121. The plaintiff in her bill sets out the compromise and endeavors to get rid of it, as obtained from her, while not possessed of mind sufficient to make a binding contract. If such be the case, unquestionably it is not binding on her. It is sufficiently proved, we think, that the plaintiff’s mind was naturally a weak one, and that, at some period of time, before the compromise took place, it was unsettled; but there is no sufficient evidence that such was its condition at the time of the settlement. On the contrary, tlie evidence is satisfactory, that she was in the full possession of her understanding at the time. She exhibited anxiety that it should be executed by her sister, Elizabeth Buchanan, and James Miller, and it was done. The terms of the compromise were agreed on at one meeting, and executed at a subsequent one. So that'the plaintiff was not hurried in the matter, but had time to deliberate and consult her friends. David Galloway, a subscribing witness to the deeds, and who lives a half mile from the plaintiff, states he knew her well, and that she knew, at the time, very well what she was doing, and he heard nothing of her derangement until after the compromise/ She requested him to testify, that, at the time it took place, she was deranged, which he refused. The counsel, who managed the suit at law in behalf of Mrs. Buchanan and Miller, states that the plaintiff was examined as a witness in that suit, and he saw no cause to doubt the sanity of her mind. He advised the compromise, be-
 
 *210
 
 cause lie thought the title of his clients not good. We repeat, then, that we are satisfied from the evidence, that whatever may have been the state of her mind previous to the compromise, at that time she was not deranged, but knew and understood what she was doing; and it is fortunate for her that such is the fact. By the compromise, she has secured to herself two of the negroes, when in fact she was entitled to none of them. The defendant alleges in his answer, and proves it by his witnesses, from the declarations of the plaintiff herself, made before her marriage, that
 
 she
 
 had purchased the negro girl Jenny from her brother, James Simmons, and had given him for her $ 100, which she had made by selling spirits. No evidence in the case shows that the title of the girl ever was in Catharine Simmons, the mother. This purchase, according to the allegation of the answer, was made in the year 1813, and the conveyance by the mother in 1822. If the fact was as she admitted — and we see no reason to doubt it — the title of all the negroes was in the defendant, Alexander, by his purchase from Thomas B. Williams, the husband. The
 
 compromise,
 
 however, secures to the plaintiff the two conveyed by him to her.
 

 Per Curiam.
 

 The Bill dismissed with costs.