YORK v. WESTALL.

(Filed December 11, 1906).

*Compromise and Settlement—Validity—Consideration—*
*Statute of Frauds—Standing Timber—Pleadings—Mutual*
*Mistake.*

1. An agreement made in good faith to compromise and settle disputed matters is valid and binding, and will be sustained as not only based upon a sufficient consideration, but upon the highest consideration of public policy as well; and this, too, without any special regard to the special merits of the controversy or the character or validity of the claims of the respective parties.

2. A contract, by which the defendant agreed to withdraw all claim to standing trees and to abandon all interest he acquired under an extension by parol of a written contract with plaintiff's grantor to cut timber, and the plaintiff, in consideration thereof, agreed to waive or release all claim for damages for the trespass alleged to have been committed by the defendant, is enforcible and is not within the statute of frauds. ·

3. The averments in the answer that "when the plaintiff purchased the land from W. and received the deed therefor he was notified by W. that the defendant was the owner of the merchantable timber trees then on the land, and that the time for cutting and removing the same had been extended for one year after the date of the expiration of their former contract, and that W. intended to insert the said agreement for an extension in the deed to plaintiff, but omitted to do so by the mistake and·inadvertence of the draftsman of the deed," are not sufficient to show any such mutual mistake of the parties to the deed as would induce a court of equity to correct it.

ACTION by W. H. York against W. H. Westall, heard by *Judge O. H. Allen* and a jury, at the June Term, 1906, of the Superior Court of BURKE.

This action was brought to recover damages for a trespass committed in entering upon the lands of the plaintiff and cutting and removing timber trees therefrom. The land formerly belonged to R. L. Wilson, who entered into a writ-

ten contract with the defendant Westall and others on 24 March, 1903, whereby he agreed to sell to them for $126 all the merchantable pine, poplar and oak timber trees on the said tract of land, to be cut and removed therefrom within two years from that date. The plaintiff bought the land from Wilson and it was conveyed to him by deed dated 19 October, 1904. He alleges in his complaint that the defendants failed to cut and remove the timber within the two years allowed to them for that purpose in the contract, but that they unlawfully entered upon the land after the expiration of that time and cut and removed from the premises many valuable trees, amounting to about 3,000 saw-logs, though claiming the right to do so under their contract with Wilson, to the plaintiff's damage five hundred dollars.

The defendant avers, in his answer, that when the plaintiff purchased the land from Wilson and received the deed therefor he was notified by Wilson that the defendants were the owners of the merchantable pine, poplar and oak timber trees then on the land, and that the time for cutting and removing the same had been extended from 24 March, 1905, the date of the expiration of their former contract, for one year after that date, and that Wilson intended to insert the said agreement for an extension in the deed to York, but omitted to do so by the mistake and inadvertence of the draftsman of the deed, and that the trees which the defendants were entitled to cut and remove were not considered by Wilson and York in fixing the purchase-price of the land; that afterwards, on 13 December, 1905, the plaintiff and the defendants came to an understanding and agreement with each other in regard to the controversy between them about the trees, and it was then agreed that defendants should have all of the saw-logs that had been cut on the premises prior to 13 December, 1905, and that the plaintiff should have all of the merchantable pine, poplar and oak timber trees still

standing, which would yield, by estimation, about 50,000 feet of lumber; and it was further agreed in consideration thereof that the defendants would no longer insist upon the right to cut the timber trees still remaining on the land and that plaintiff would make no claim on account of the trees which had already been cut, or the saw-logs which had been removed from the premises after 24 March, 1905. That the defendant has not, since said agreement was made with the plaintiff, cut any timber trees on the land or removed any saw-logs therefrom. That the trees and saw-logs, for the cutting and conversion of which this action was brought, are the same described in that agreement and which the defendants had theretofore removed from the land, and that this suit was brought in violation of the express promise of the plaintiff not to hold the defendant liable for the cutting and removal of the same.

Among others, the defendants tendered the following issue: "Did the plaintiff release and discharge the defendant from liability as alleged in the answer?"

The Court refused to submit the issue, and the defendants excepted, as they did to the issues submitted by the Court, which, with the answers thereto, were as follows:

1. What was the value of the timber trees cut and removed by the defendant W. H. Westall from the land which is described in paragraph one of complaint after 24 March, 1905? Answer: $150.

2. What damage, if any, was done to said land by the defendant in cutting and removing timber trees from the same after 24 March, 1905? Answer: $25.

Judgment was given for the plaintiff upon the verdict, and the defendant appealed.

*Avery & Ervin* for the plaintiff.
*Self & Whitener* and *S. J. Ervin* for the defendant.

WALKER, J., after stating the case: We are unable to perceive why the issue which was tendered by the defendants was not a proper one. It was directly raised by the answer of the defendant Westall, the only one of the two defendants named in the summons who was served. The case was prosecuted against him alone.

The rule is established that an agreement to compromise and settle disputed matters is valid and binding. The law favors the avoidance or adjustment of litigation, and a compromise made in good faith for such a purpose will be sustained as not only based upon a sufficient consideration but upon the highest consideration of public policy as well, and this, too, without any special regard to the special merits of the controversy or the character or validity of the claims of the respective parties. The real consideration which each party receives, in contemplation of law, under the settlement, is not to be found so much in the mutual sacrifice of any rights, as in the bare fact that they have settled their dispute, which is considered to be of interest and value to each one of them. 8 Cyc., p. 505, et seq. They give and take, so to speak, not knowing precisely what will be the outcome if they should bring their controversy to the test of the law and subject it to the uncertainties of litigation. Under such circumstances, there is no good reason why the mutual concessions of the parties, resulting in a settlement of their dispute, should not be upheld.

In discussing the law of contracts, with reference to the consideration sufficient to support them, Mr. Parsons says that the prevention of litigation is a valid and adequate consideration, for the law favors the settlement of disputes, and on this ground a mutual compromise is sustained. It is not only a sufficient, but a highly favored consideration, and no investigation into the character or relative value of the different claims involved will be entered into for the purpose of

setting aside a compromise, if, of course, the parties are engaged in a lawful transaction, it being enough if the parties to the agreement thought at the time that there was a question between them—an actual . controversy—without regard to what may afterwards turn out to have been an inequality of consideration. 1 Parsons on Contract (5 Ed.), pp. 438, 439.

So in *Barnawell v. Threadgill,* 56 N. C., 58, this Court, by *Battle, J.,* citing *Leonard v. Leonard,* 2 Ball. & Best, 178, and quoting the words of *Lord Chancellor Manners,* says: "In the case of a compromise as distinguished from a release, both parties are ignorant of their rights, and the agreement is founded on that ignorance, and the party surrendering may, in truth, have nothing to surrender; and whether the uncertainty rests upon a doubt in point of fact or a doubt in point of law, if both parties are in the same ignorance, the fairness of the compromise cannot be affected by a subsequent investigation and result." And in *Williams v. Alexander,* 39 N. C., 209, the Court thus refers to the subject: "While the title is thus in contestation, or while he (the defendant) is claiming them as his property, and the plaintiff holding them as hers, they agree, in order to put an end to the dispute, to divide the property. The compromise of a doubtful right, fairly entered into, with due deliberation, will be sustained in a court of equity. It is reasonable and proper it should be so; parties must be at liberty to settle their own controversies by dividing the property in controversy, and public policy upholds the right." *Mayo v. Gardner,* 49 N. C., 359, is also directly in point on this phase of the question, and the Court there mentions with approval the statement of the law as contained in Parsons on Contracts, *supra.*

It was said on the argument, that the ruling of the Court below was based upon the idea that there was no consideration to support the agreement, and for that reason we have discussed the proposition at some length. Analogous cases

are *Matthis v. Bryson,* 49 N. C., 508; *Findly v. Ray,* 50 N. C., 125; *In re Lucy,* 21 Eng. Law and Eq., 199.

The defendant agreed to withdraw all claim to the standing trees and to abandon all interest he acquired under the contract with Wilson, and the plaintiff, on his part, in consideration thereof, agreed to waive or release all claim for damages for the trespass alleged to have been committed by the defendant. This was the contract, as we understand it to have been made, and we do not see why it is not enforcible, or why the plaintiff should be allowed to repudiate it and recover damages contrary to his solemn agreement.

The plaintiff's counsel, however, contended that the agreement was void under the statute of frauds. It may now be considered as settled, in this State at least, that a contract for the sale of standing timber is within the statute of frauds. *Brittain v. McKay,* 23 N. C., 265; *Mizell v. Burnett,* 49 N. C., 249; *Moring v. Ward,* 50 N. C., 272; *Flynt v. Conrad,* 61 N. C., 190; *Green v. Railroad,* 73 N. C., 524; *Mizell v. Ruffin,* 113 N. C., 21; *Drake v. Howell,* 133 N. C., 162; *Hawkins v. Lumber Co.,* 139 N. C., 160, and *Ives v. Railroad* (at this term). But this is in no sense a contract for the sale or conveyance of land or any interest therein, but an agreement for the adjustment of differences between the parties where, under the circumstances, no deed from the defendant to the plaintiff was necessary to consummate the arrangement. The plaintiff had only a claim for damages and the defendant Westall had acquired the right to cut the timber during the extended period by parol, and we do not see why he could not relinquish it in the same way. This agreement between him and Wilson did not operate to pass any interest or estate in the trees, as it was not in writing, but it did have the legal effect to confer upon the defendant a license or privilege to enter upon the land and cut the remaining timber.

This very question arose in *Green v. Railroad,* 73 N. C., 524, where the same kind of contract was made orally be-

tween the parties, and the Court, after holding that while it could not be enforced specifically as an executory agreement, not having been reduced to writing, decided that "the contract amounted to a license to the defendant, from the plaintiff, to enter his land and cut and cord wood. As soon as the wood was cut it became personal property, and it matters not whether the plaintiff himself cut and corded the wood he sold to the defendant, or whether, under the contract, he used the labor of the defendant to cut and cord it." See *Ives v. Railroad* (at this term).

It may be that the defendant intended to assert an equitable estoppel as against Wilson and the plaintiff, upon the ground that Wilson had agreed before the two years expired, and when the defendant, perhaps, still had time to cut the trees then standing on the land, that he would extend the time for cutting them one year longer, and that defendant, relying upon the agreement, refrained from cutting during the remaining portion of the two years, and that the plaintiff York, at the time he purchased the land, had actual notice of this agreement and consented tó abide by it, and that, in consideration of his said consent and promise so to do, he was allowed a reduction in the price asked for the land. Whether this constitutes a good equitable estoppel and will render the license to enter upon the land and cut the trees irrevocable or will estop Wilson, and his assignee York, from pleading the statute of frauds, if any interest or estate in the standing trees passed to the defendant, and that statute applies, is a question we need not decide, as we do not think it is sufficiently raised by the pleadings, nor have we formed an opinion in regard to it. We leave it open for future consideration should it arise.

We do not think the defendant has pleaded any matter which entitles him to reform the deed of Wilson to the plaintiff York. The averments of the answer are not sufficient to

show any such mutual mistake of the parties to the deed as would induce a court of equity to correct it. Whether such an equity exists in favor of the defendant, he not being a party to the deed, or whether he can avail himself of the facts out of which the supposed equity is said to have arisen, as an equitable defense to this action, are also questions not before us, although discussed on the argument.

There was error in the ruling of the Court by which the issue was rejected, and for this a new trial is awarded as to all the issues in the case.

New Trial.