This action was brought to recover the amount alleged to be due under a contract between the parties, by which defendant employed plaintiff as its traveling salesman in parts of North Carolina and South Carolina, the territory being designated by reference to a map described therein. Plaintiff was to receive 2 3/4 per cent of commissions on all goods sold by him and shipped into his territory; to have a drawing account or guaranteed monthly salary of $150, payable at the end of each month, and to be paid all his necessary traveling expenses, the salary to be paid during the time he was at work in his territory and the contract to continue in force for the period of one year. The contract was dated 18 August, 1911, and was, by mutual consent, terminated 27 July, 1912, plaintiff having resigned his position on the latter date. Plaintiff received his commissions, salary, and expenses from time to time during the performance of the services required of him under the contract, and now claims that on 27 July, 1912, when he resigned, that he had sold goods for the defendant to responsible purchasers, which were thereafter shipped to them by defendant, amounting in value, according to ruling prices of defendant, to $46,528, the commission on which, at the stipulated rate, is $1,285.51, for which he demands judgment. The parties disputed with each other as to the true amount due the plaintiff on account of the transactions *Page 323 
between them, and on 27 July, 1912, they came to a settlement, in which defendant promised to pay the agreed commission on all sales of goods which had been made by plaintiff in his territory, and which had not then been shipped by defendants, but which were shipped afterwards, the same to be paid when the goods were so shipped, and it is on the sale of these goods, as stated, that he claims his commission. The court submitted one issue to the jury, as to the amount of defendant's indebtedness to plaintiff, and they returned a verdict for $375.50. Judgment was thereupon rendered, and the defendant appealed.
It appears that, after the pleadings had been read and the jury impaneled, refendant [defendant] requested the court to order a reference of the case, which was refused, and to this the first exception was taken. The motion for a compulsory reference should have been made before the (282) impaneling of the jury. It was due then, in the regular order of procedure, and by passing that stage in the trial without acting, the defendant waived his right; he having impliedly accepted the method of trial by jury, instead, by his silence. Such motions must, of course, be submitted in apt time. A like motion was held to have been properly refused, for this reason, in Hughes v. Boone, 102 N.C. 137. See Kerr v. Hicks,131 N.C. 90. The statute provides that "When the parties do not consent, the court may, upon the application of either, or of its own motion, direct a reference," in the cases enumerated therein. Revisal, sec. 519. Whether this is a discretionary power of the judge we need not decide, as we are of the opinion that this case does not fall within any of the classes where such a reference is allowed. No long or complicated account was necessary to decide the issue between the parties or for the information of the court, and the case, it seems, was tried very easily and fairly without it.
It was competent for the plaintiff, while testifying in his own behalf, to state the quantity of goods sold by him, in order that it might be subsequently shown how many of them had been shipped under his contract and settlement of 27 July, 1911; and for a like reason it was not improper that he should be permitted to refer to section 4 of the complaint and answer to make his testimony intelligible. They were preliminary matters, and the ruling of the court did not make the sections, so referred to, evidence in the case. We see no objection to the same witness stating what he claimed was owing by the defendant, and his explaining the items. Nor was there any valid objection to his stating the items which the defendants had wrongfully charged to him or debited to him with on *Page 324 
their books, as something had to be deducted from the amount they had promised to pay him. It was necessary that this should appear, in order to ascertain the correct balance. All this covers the second, third, fourth, fifth, and sixth exceptions. As to his being allowed to state the amount of commissions on $103,000 at 2 3/4 per cent, if he had answered it, we cannot see what harm would have resulted to defendant; but his answer was not responsive to the question, and there is no exception to the answer, and therefore, on this ground, the seventh exception must fail. Catonv. Toler, 160 N.C. 104; Shaw v. Telegraph Co., 151 N.C. 638. But no harm was actually done by the question and answer, as in the cross-examination he stated, in answer to defendant's question, that he only claimed commissions on the sales amounting to $69,624.95 at 2 3/4 per cent, which would be $1,914.67, and this amount, with a premium due him of $49, was all that he demanded, the total being $1,963.67; he then stated the amount of the entire shipments, both before and after 27 July, 1912, to be $69,624.95; so that the defendant was not prejudiced by the (283) question as to the amount of the commission, on $103,000 at 2 3/4 per cent, if it had been answered, as he did not seek to recover them.
This brings us to the consideration of the question, and the pivotal one in the case, whether the settlement of 27 July, 1912, is binding upon defendant. We cannot see why it is not. The parties had disagreed as to the balance, if any, due the plaintiff under the contract, and for this reason they came to an accounting, for the purpose of settling the differences between them. This is a sufficient consideration to support the settlement and the agreements or covenants entered into as a part thereof.
In the recent case of Burriss v. Starr, 165 N.C. 657, defendant's appeal at p. 662, we said in regard to a similar question: "In Mayo v.Gardner, 49 N.C. 359, this Court said, by Chief Justice Nash: `In reLucy, 21 Eng. Law and Eq., 199, it was decided that, to sustain a compromise, it was sufficient if the parties thought, at the time of entering into it, that there was a bona fide (or real question between them), though in fact there was no such question.' The law favors the settlements of disputes, as was said in that case. It is stated in 9 Cyc., 345, that `the compromise of a disputed claim may uphold a promise, although the demand was unfounded,' citing numerous cases to sustain the text."
Chief Justice Nash, said further, in Mayo v. Gardner, supra: "The prevention of litigation is a valid and sufficient consideration; for the law favors the settlement of disputes. Thus, a submission of claims and demands to arbitration is binding, so far as this, that the mutual promises are a consideration, each for the other. 1 Parsons Contract, 364; Com. Dig., `Action on the case on Assumpsit,' A 1, B 2. In Keson v. Barclay,2 Pa. 531, an action of slander for words was compromised by the defendants *Page 325 
agreeing to pay the plaintiff a sum certain; the Court held there was a sufficient consideration, though the words used were, not slanderous." And in Parsons on Contracts (5 Ed.), p. 438, book 2, ch. 1, sec. 4, it is said: "On the same ground a mutual compromise is sustained. With the courts of this country the prevention of litigation is not only a sufficient, but a highly favored consideration, and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time that there was a question between them. And in these cases inequality of consideration does not constitute a valid objection; it is enough if there be an actual controversy, of which the issue may fairly be considered by both parties as doubtful." It may be added that the defendant could not hold back the shipment of goods already sold by plaintiff for the purpose, merely, of defeating his recovery of his legitimate commissions. (284) He had performed his part of the contract and was a faithful agent, so far as appears, and he was entitled to fair treatment in return therefor. The jury might have so found upon the evidence.
The eighth and last exception is equally untenable. The judge could not direct a verdict upon the evidence, as requested to do. It was for the jury to say what was the balance due the plaintiff. There was evidence, we think, upon which they could have found a larger balance than the one indicated in defendant's prayer. Anyhow, there was no ground for such a peremptory instruction, and, besides, defendant could not select a part of the evidence, and base a request for a charge upon that alone. It must be considered as a whole. It appears that all of the testimony was not stated in the record. But, in any view, the instruction would have been improper as invading the province of the jury.
After a careful examination of the entire case, we find no reason for complaint on the part of the defendant. The verdict seems to have been a very moderate one, as we construe the evidence.
No error.
Cited: Ferebee v. Berry, 168 N.C. 283 (4c); Lee v. Thornton, 176 N.C. 211
(1c); Armstrong v. Polakavetz, 191 N.C. 735 (2c); Bohannon v. Trotman,214 N.C. 721 (2c). *Page 326