### F. K. BORDEN v. SOUTHERN RAILWAY COMPANY.

(Filed March 6, 1918.)

**Railroads—Negligence—Crossings—Evidence—Trials—Questions for Jury.**

Ordinarily, the question of whether the engineer on a railroad locomotive, by the exercise of proper observation and care, can avoid a collision with a vehicle being driven over a crossing in unobstructed view, is a question of fact for the jury; and in this case, where there was evidence that defendant's team had become frightened and beyond the driver's control, and was struck at a crossing by the locomotive, going twice as fast as the team, it is held that plaintiff's motion for nonsuit was properly overruled.

CLARK, C. J., concurring.

ACTION, tried before *Whedbee, J.,* at January Term, 1918, of WAYNE, for damages for the negligent killing of plaintiff's mule. From a judgment of nonsuit, plaintiff appealed.

*Langston, Allen & Taylor for plaintiff.*
*J. L. Barham for defendant.*

BROWN, J. The testimony introduced for the plaintiff tends to prove these facts:

On 11 May, 1916, a train of the defendant had gone from the switch on the main line leading west from Goldsboro and was, leaving town, a

few hundred feet up the track. Chestnut Street crosses to the railroad at right angles and there is a road parallel with the railroad running west from Chestnut Street. This road is about 20 or 25 feet from the railroad at the point where it leaves Chestnut Street and verges toward the railroad until it crosses it at a distance of about 300 or 400 feet further west. This road is very close to the railroad, is on level ground, running with the track, which is perfectly straight. There is no road leading from this one, and a team keeping in this road would have to cross the railroad at the junction point. The team of mules belonging to the plaintiff and driven by a negro came into this road from Chestnut Street going west.

At the time the team came in from Chestnut Street, the train had gone about 600 or 700 feet and was still 300 or 400 feet from the crossing, and the driver lost control of them and though he did his best to pull them from the railroad, they continued running away and came on the crossing just as the train did and one of them was killed.

There was no obstruction between the engine of the train and the team and the train continued to overtake them, going at a rate of speed twice as fast as the team.

We are of opinion that the evidence is sufficient to support the inference that the engineer, by a watchful and careful lookout, could have seen the condition of the team and its driver and possibly in time to have stopped the engine and avoided the accident. The jury are not compelled to draw that inference, or to come to such conclusion unless they are satisfied by a preponderance of the evidence that such is the case. This Court has said in many cases that where live stock is injured by a train and the evidence is such as to warrant it, the question whether the engineer, by keeping a proper lookout, could have prevented the injury, is a question for the jury.

Before arriving at such conclusion, the jury should consider the testimony and all the circumstances surrounding the accident. *Deans v. R. R.,* 107 N. C., 692, and cases cited.

New trial.

CLARK, C. J., concurring: Had this action been begun within six months a nonsuit would have been forbidden on the further ground that Revisal, 2645, makes the killing or injury of live stock by cars or engine of any railroad "prima-facie evidence of negligence on the part of the company," if the action is brought within six months. This has been held to embrace oxen yoked to a cart and under control of a driver. *Randall v. R. R.,* 104 N. C., 410. This case was reaffirmed on rehearing after the fullest discussion. See 107 N. C., 748. This has been followed in many cases. Anno. Ed.

These cases hold that the statute applies even when the animal is under the *control* of the driver. Certainly it would apply when, as here, he had lost control. Among late cases is *Hanford v. R. R.*, 167 N. C., 279, where the presumption was applied to a horse which broke loose from a buggy, and *Briley v. R. R.*, 174 N. C., 785, where it was claimed that a cow was killed by running into the train to rejoin the herd.

When the action is brought within the statutory time, a prima facie case is raised and it is error to nonsuit.

The public roads belong to the people, who have the prior right over them. The grant to *quasi*-public corporations, operating for private gain, to cross public roads is subordinate to the public right, and must be exercised with due care, not only in running the trains but in locating and safeguarding the crossings. In some instances levers and gongs can be used, but now when our population and the volume of business, both on railroads and public roads are rapidly increasing and will continue to do so, there are few points where to maintain a grade crossing is not negligence *per se*. At the very least, it is a question for a jury, for it is *prima facie* negligence (which prevents a nonsuit) when there is a grade crossing on the edge of a growing, busy town like Goldsboro, the public roads leading into which are crowded with traffic and travel. For nearly two-thirds of a century this defendant has been indulged without these safeguards being required. It is surely now time that all railroads were fixed with notice of the duty they owe to the public at all crossings of "safety first."

Eleven years ago the Corporation Commission by chapter 469, Laws 1907, now Revisal, 1097 (10), were given the power to abolish grade crossings. That they have not done so makes none the less all grade crossings a nuisance, for which the railroad company is liable, wherever the volume of traffic on the public roads makes such crossings dangerous or a serious interruption to the free use of the public roads. This matter has been often discussed. *McMillan v. R. R.*, 172 N. C., 857-858; *R. R. v. Goldsboro*, 155 N. C., 365 (affirmed on writ of error, 232 U. S., 548); *Gerringer v. R. R.*, 146 N. C., 35-37; *Wilson v. R. R.*, 142 U. S., 349; *Cooper v. R. R.*, 140 N. C., 229, and other cases.

In a free country, the first consideration always is the safety, convenience, and welfare of its people.