F. M. ARMSTRONG, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF M. J. BLAYLOCK, BANKRUPT, v. JACOB POLAKAVETZ.

(Filed 12 May, 1926.)

1. **Clerks of Court—Judgments—Appeal—Courts—Jurisdiction.**

   An appeal from the judgment of the clerk upon the pleadings carries the matter *de novo* to the Superior Court.

2. **Compromise and Settlement—Consideration — Claim and Delivery— Actions.**

   A compromise by the parties to an action concerning the disposition of property, the subject of claim and delivery, is upon a valuable consideration and enforceable.

3. **Actions—Compromise and Settlement—Contracts—Writing.**

   A compromise of a disputed matter in litigation is an agreement whereby the parties make concessions among themselves, in consideration of each giving up certain rights claimed by them, and it is not ordinarily required that the agreement be reduced to writing.

4. **Appeal and Error—Objections and Exceptions—Issues—Pleadings— Evidence—Trial by Jury.**

   Where on appeal from a judgment of the clerk of the Superior Court it appears that the appealing party has not answered the allegations, sufficiently alleged, of a compromise and settlement had between the parties, or offered evidence to the contrary, or tendered an issue, etc., no issue of fact is raised requiring the determination of a jury, and the matter presented is one of law or legal inference.

APPEAL from *Lane, J.,* at October Term, 1925, of MONTGOMERY. Affirmed.

The court below rendered the following judgment: "This cause coming on to be heard before me, and being heard, at Chambers, September

Term, of Montgomery County Superior Court, and it appearing to the court that this is an appeal from a judgment rendered in this action by the clerk of this court in favor of the defendant herein, from which the plaintiff herein appealed, and it further appearing to the court from the affidavits and exhibits filed herein and submitted to the court that the controversy between the parties hereto arises out of disputed claim to the title and right of possession of a cut-off wood saw described in the claim and delivery proceeding filed herein, after hearing the contentions of the parties, the court finds the following facts:

1. That prior to the judgment signed by the clerk aforesaid, and from which the plaintiff appealed, the said plaintiff submitted to a voluntary nonsuit in the above-entitled action.

2. That the subject-matter of this suit and the right and title to the same, and the possession thereof, is in the jurisdiction and control of the Bankruptcy Court of the United States District Court for the Western District of North Carolina, Greensboro; that the said court had assumed and acquired jurisdiction of the said property and controversy between the parties before the rendition of the judgment herein appealed from.

3. That the defendant herein has filed his claim, as a creditor of the bankrupt, M. J. Blaylock, for the subject-matter of this suit, with the referee in bankruptcy in the said United States District Court.

It is, therefore, on motion of plaintiff, ordered, adjudged and decreed, that the judgment rendered in this action by the said clerk be, together with this action, dismissed, and that the defendant pay the costs of this action to be taxed by the clerk."

From the judgment rendered defendant excepted, assigned error and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*Chas. A. Armstrong for plaintiff.*
*B. S. Hurley and G. V. Fesperman for defendant.*

CLARKSON, J. Plaintiff brought action in Montgomery County, before the clerk and against the defendant, on 7 April, 1925, and sued out the provisional or ancillary remedy of claim and delivery, made the usual affidavit and bond and had the sheriff to seize "one wood saw, frame and all attachments thereto belonging, bought from J. Polakavetz by the said bankrupt, M. J. Blaylock." The sheriff, after holding the property three days, defendant giving no undertaking, turned same over to plaintiff.

On 4 May, 1925, the plaintiff before the clerk took a voluntary nonsuit.

On 14 September, 1925, over four months after, the clerk rendered the following judgment:

"This cause coming on to be heard, and being heard before the Honorable Clerk Superior Court of Montgomery County, Edgar Haywood: Whereas the plaintiff, through his attorney, Chas. A. Armstrong, submits to a judgment of voluntary nonsuit: It is therefore adjudged and decreed that the defendant recover the property taken by the said plaintiff in this action, and if the return of property cannot be had, then the value of the property, which is $200, be collected from the sureties in this action, and the cost of this action be taxed by the clerk.

Sureties being J. W. Lemons and Ivey C. Nance.

It is further shown by the court records that no verified complaint has ever been filed by the plaintiff in the above action.

In carrying out the intention of this judgment it is ordered that execution issue against the plaintiff and his sureties if the property cannot be had."

Plaintiff excepted to the judgment and appealed to the judge of the Superior Court on the following grounds:

"1. For the said judgment was rendered without proper and lawful notice to the plaintiff, neither plaintiff nor his counsel being present.

"2. For all the matters and differences in dispute between the parties hereto were duly settled and compromised between the plaintiff and the defendant prior to the rendition of this judgment, as fully appears by affidavits hereto attached and marked Exhibits A, B, and C."

The record shows, uncontradicted:

(1) That on 10 April, 1925, the defendant made out and on 22 April, 1925, filed with the referee in bankruptcy, *In re* M. J. Blaylock, in Bankruptcy, a claim for the very property taken by plaintiff in claim and delivery and in the claim filed by defendant he made oath: "Rent of machine and sale thereof, to wit, wood saw, more particularly set forth in the itemized account hereto annexed and made a part of this proof." In the itemized account is set forth "Sale of machine $237.01."

(2) The affidavits of F. M. Armstrong, corroborated by Ivey C. Nance, were to the effect: That the defendant did not want to contest the claim and delivery proceeding which plaintiff had brought for the machine; that plaintiff was authorized to dispose of same and get what he could out of the machine, and he would relinquish all right and possession to the machine, and that he would file his claim for the value of the machine in the bankruptcy court; that he did not want to go to the expense of paying court costs and employing lawyers; that immediately after the agreement and compromise, plaintiff took a nonsuit in the action with claim and delivery and paid the cost; took the machine and shortly after defendant filed his claim for the "rent of machine and

sale thereof," with the referee in bankruptcy; that the agreement and compromise between the parties, plaintiff and defendant, were carried out long before the judgment of the clerk on 14 September, 1925, now in controversy.

The defendant makes the following assignments of error:

"The trial judge should have overruled motion of the plaintiff to dismiss the judgment as rendered by the clerk of Superior Court.

"That there was error in the order of the court allowing the motion to be made by the defendant to dismiss in this action.

"That the court erred in allowing counsel for plaintiff to introduce an affidavit showing that the case had been entered into a compromise between plaintiff and defendant.

"That there is error in the judgment of the court, in that the same is contrary to the evidence and contrary to the law."

Plaintiff was in his rights in appealing from the clerk of the Superior Court, and when in the Superior Court before the judge the whole matter was properly before that court to make all lawful orders, judgments and decrees. *Trust Co. v. Pumpelly, ante,* 675.

The case when in the Superior Court presented no issue of fact. The plaintiff's affidavits were uncontradicted, no demand for a jury trial.

Defendant says that Constitution of North Carolina, Art. I, sec. 17, is applicable: "No person ought to be taken, imprisoned or disseized of his freehold, liberty or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the law of the land."

The affidavits treated in the nature of a complaint alleged a compromise contract, if denied, raised an issue of fact and upon demand made defendant would have been entitled to a jury trial on the issue. No denial was made and no demand for a jury to pass on the issue of fact. Defendant waived his right. By analogy it has been repeatedly held in this jurisdiction that in reference cases this right may be waived as in *Driller Co. v. Worth,* 117 N. C., at p. 520: "Where a party promptly insists upon reserving his right and causes his objection to be entered of record, when the compulsory order of reference is made, he may still waive by failing to assert it in his exceptions to the referee's report. *Harris v. Shaffer,* 92 N. C., 30; *Yelverton v. Coley,* 101 N. C., 248." *Baker v. Edwards,* 176 N. C., at p. 231; *S. v. Lackey, ante,* 571.

In 5 R. C. L., p. 878, it is said: "It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely scutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration of each agreement is not only valuable, but highly

meritorious. They are encouraged because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement. Courts of equity, like courts of law, do not discountenance compromises of doubtful claims, much less of suits actually instituted for litigating such claims. Such a rule would tend to defeat and discourage all compromise. Equity favors amicable adjustments, and will not disturb them unless its jurisdictions invoked in favor of one without knowledge at the time, by satisfactory evidence of deception, fraud or mistake."

This has always been the policy of this State borne out by numerous authorities. *Sutton v. Robeson,* 31 N. C., 380; *Williams v. Alexander,* 39 N. C., 207; *Mayo v. Gardner,* 49 N. C., 359; *Barnawell v. Threadgill,* 56 N. C., 58; *York v. Westall,* 143 N. C., 276; *Peyton v. Shoe Co.,* 167 N. C., 280.

.In *Beck v. Wilkins-Ricks Co.,* 186 N. C., 214, it is said: "In *Mayo v. Gardner,* 49 N. C., 359, this Court said, by *Chief Justice Nash: 'In re Lucy,* 21 Eng. Law and Eq. Rep., 199, it was decided that, to sustain a compromise, it was sufficient if the parties thought, at the time of entering into it, that there was a bona fide (or real) question between them, though in fact there was no such question.' The law favors the settlement of disputes, as was said in that case. It is stated in 9 Cyc., 345, that 'the compromise of a disputed claim may uphold a promise, although the demand was unfounded,' citing numerous cases in the notes to sustain the text."

We cannot sustain the defendant's assignments of error. There is no law requiring a compromise contract like the one under consideration to be put in writing. A compromise is any agreement by which a controversy is terminated in consideration of mutual concessions. In the present case the contract was executed and the performance by each fully carried into effect. The parties were involved in a law suit and each agreed upon terms satisfactory to themselves to settle the controversy, and each carried out with the other their mutual or reciprocal agreements.

The law encourages and looks with favor on litigants adjusting differences—compromises like the present one have been held binding from time whence "the memory of man runneth not to the contrary." It is constantly done between litigants to their credit and good judgment. The finest exhibition of a generous settlement was made when there was a strife between the herdsmen of Abram's cattle and Lot's cattle. The patriarch Abram said: *"For we be brethren.* Is not the whole land before thee? separate thyself, I pray thee, from me: if thou wilt take the left hand, then I will go to the right; or if thou depart to the right hand, then I will go to the left." Gen., ch. 13, part v. 8 and v. 9.

To the same effect are settlements in cases relating to the adjustment of family disputes. . Courts will not closely scrutinize the consideration when the purpose is to protect and preserve the peace and honor of the family or the family property. *Tise v. Hicks, ante,* 609.

As said, the affidavits could have been controverted if untrue, and an issue of fact tried before a jury if demanded. This was not done by defendant. The affidavits were undisputed and, under the facts and circumstances of this case, permissible. If controverted and on demand, an issue of fact could have been submitted to a jury. The case being before the proper tribunal, the parties being *sui juris,* the proof of settlement and compromise was proper.

It may not be amiss to call attention to the proper form of a judgment in cases of this kind—claim and delivery. *Trust Co. v. Hayes, ante,* 542.

We think, for the reasons given in this opinion, the judgment of the court below correct.

Judgment affirmed.