THE KNIGHT PUBLISHING CO., INC., Plaintiff v. THE CHASE MANHATTAN BANK, N.A. and FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Defendants

No. COA98-12

(Filed 21 March 2000)

**Compromise and Settlement; Damages and Remedies— settlement by one of several parties—credit against judgment**

The trial court did not abuse its discretion by denying a motion for credit and for discovery of how a settlement was reached where Knight Publishing was awarded a judgment for losses arising from checks written in a fraudulent invoicing scheme, defendants Chase Manhattan and First Union learned that plaintiff had settled claims with the companies for whom the fraudulent invoices were submitted, and Chase Manhattan and First Union filed this motion for credits on the judgment and for discovery to determine how the settlement was reached. Knight Publishing is not receiving payments in excess of those to which it is equitably entitled and, because the credit was properly denied, how the settlement agreement was negotiated is immaterial, irrelevant, and not subject to discovery.

Judge WYNN dissenting.

KNIGHT PUBL'G CO. v. CHASE MANHATTAN BANK

[137 N.C. App. 27 (2000)]

On remand from the Supreme Court of North Carolina in accordance with their opinion, 351 N.C. 98, —— S.E.2d —— (1999) (September 27, 1999). Previously heard by this Court on 22 September 1998, 131 N.C. App. 257, 506 S.E.2d 728 (1998), on appeal by defendants from an order and also from a modified final order and judgment both filed 19 September 1997 by Judge Chase B. Saunders in Mecklenburg County Superior Court. The issues addressed on remand are the same as those previously heard by this Court.

*Smith Helms Mulliss & Moore, L.L.P., by Jonathan E. Buchan and T. Jonathan Adams, for plaintiff-appellee.*

*Parker, Poe, Adams & Bernstein, L.L.P., by William L. Rikard, Jr., Craig T. Lynch, Kiah T. Ford, IV, and R. Bruce Thompson, II, for defendant-appellants.*

GREENE, Judge.

Plaintiff, The Knight Publishing Co., Inc. (Knight Publishing), and defendants, The Chase Manhattan Bank, N.A. (Chase Manhattan) and First Union National Bank of North Carolina (First Union), have been involved in this protracted litigation for over six years. Indeed, Knight Publishing initially filed a complaint against Chase Manhattan and First Union in July of 1992 seeking to recover for the improper handling of checks drawn on Knight Publishing's account as part of a fraudulent invoice scheme. The facts recited below are drawn in part from our earlier opinion regarding this matter. *See Knight Publishing Co. v. Chase Manhattan Bank,* 125 N.C. App. 1, 479 S.E.2d 478, *disc. review denied,* 346 N.C. 280, 487 S.E.2d 548, *motion dismissed,* 347 N.C. 137, 492 S.E.2d 22 (1997).

From 1980 until 1992, Oren Johnson (Johnson) headed Knight Publishing's camera/platemaking department. Beginning in 1985, Johnson conspired with John Rawlins (Rawlins) and Lloyd Douglas Moore (Moore), the owners of Graphic Image, Inc. (Graphic Image), to defraud Knight Publishing. Specifically, Graphic Image would deliver bogus invoices to Johnson and charge Knight Publishing for supplies it never received. Johnson would forward the invoices to Knight Publishing's accounts payable department, which would issue checks payable to "Graphic Image." Graphic Image would receive these checks, cash them, and Johnson, Rawlins, and Moore would divide the monies.

Knight Publishing maintained a checking account at both Chase Manhattan and First Union. All but two checks were drawn on Knight

Publishing's Chase Manhattan account. All of the checks, however, were deposited at First Union's banks.

From 1985 until 1987, Marilyn Mabe (Mabe), a bookkeeper for Graphic Image, deposited the improperly obtained checks into Graphic Image's First Union account. In July of 1987, this procedure changed after Conbraco, Inc. (Conbraco) purchased 50% of Graphic Image's stock, leaving Rawlins and Moore each with a 25% share. Rawlins and Moore were concerned their embezzlement scheme would be discovered by Conbraco employees, and therefore instructed Mabe to deposit Knight Publishing's checks into Graphic Color Prep.'s (Graphic Prep.'s) account—Graphic Prep. being a wholly owned partnership of Rawlins and Moore. As instructed, Mabe began depositing the checks into Graphic Prep.'s account by endorsing them as follows:

> "FOR DEPOSIT ONLY
> GRAPHIC COLOR PREP.
> ACCT. #7048286557"

From January 1988 to May 1992, Mabe deposited approximately fifty-five checks into the Graphic Prep. account with a total face amount of $1,479,003.96.

In June of 1992, Knight Publishing discovered the embezzlement scheme and demanded reimbursement from Chase Manhattan and First Union. On 26 October 1994, Judge Chase B. Saunders entered an Order and Judgment finding: (1) Chase Manhattan liable for charging improperly endorsed checks against Knight Publishing's account; (2) Chase Manhattan's liability is limited to those checks charged after 19 June 1989 because Knight Publishing's claim against any checks prior to that time was time barred under U.C.C. § 4-406; and (3) First Union's summary judgment motion should be granted. Thereafter, on 9 January 1995, the trial court entered a Final Order and Judgment whereby Knight Publishing was awarded $1,202,344.84 in damages, representing the principal amount of Knight Publishing's non-time barred losses. Knight Publishing and Chase Manhattan appealed both of those orders.

On 7 January 1997, this Court ruled on the aforementioned appeals. Specifically, we affirmed the trial court's granting of summary judgment against Chase Manhattan, reversed the trial court's decision to grant First Union's summary judgment motion, and reversed the trial court's decision concerning the applicable rate of interest. *Id.* at 21, 479 S.E.2d at 490.

In accordance with our ruling, Judge Saunders held three hearings in September of 1997 to consider Knight Publishing's proposed Modified Final Order and Judgment. It was during one of these hearings that Chase Manhattan and First Union first discovered Knight Publishing had settled claims (Settlement Agreement) with Graphic Images' successor corporation, Performance Printing Inc. (Performance Printing), and Conbraco. According to the terms of the Settlement Agreement, Performance Printing and Conbraco would pay Knight Publishing $625,000.00 for the checks drawn on Knight Publishing's account prior to 19 June 1989. Moreover, Rawlins and Moore agreed to transfer all of their Graphic Image and Performance Printing Stock to Performance Printing, and Knight Publishing agreed to dismiss all claims against Graphic Image, Graphic Prep., Rawlins, and Moore. Lastly, Knight Publishing agreed not to enforce federally imposed restitution orders against Rawlins and Moore.

Upon learning of the Settlement Agreement, Chase Manhattan and First Union argued, *inter alia*, that they were entitled to credits on the judgment corresponding to the monies received by Knight Publishing under the Settlement Agreement. Judge Saunders scheduled a third hearing on 10 September 1997, at which time Chase Manhattan and First Union filed a motion for credit and for discovery to determine how Knight Publishing reached the Settlement Agreement and to what claims the monies received were applied. On 19 September 1997, after hearing arguments and accepting briefs, Judge Saunders entered an order denying the motion for credit and for discovery, and then set forth the Modified Final Order and Judgment awarding Knight Publishing damages without crediting Chase Manhattan and First Union for any of the monies Knight Publishing had already received with regard to this matter. Chase Manhattan and First Union appeal.

---

The single issue presented is whether Chase Manhattan and First Union are entitled, in equity, to a credit on the Modified Final Order and Judgment.

A general principle of equity is that a party is entitled to a full recovery for its damages and that any recovery in excess of that amount should be denied. *See Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357, *disc. review denied*, 346 N.C. 281, 487 S.E.2d 551 (1997). Our review of the record in this case accords with that of the trial court and reveals no abuse of discretion, the standard for the review of relief sought on the basis

of equity. *See* 27A Am. Jur. 2d *Equity*, § 97 (1996). The record simply does not support that Knight Publishing, even when the credit requested is denied, is receiving payments in excess of those to which it is equitably entitled. Accordingly, the order of the trial court denying the credit request is affirmed.

Furthermore, because the credit request was properly denied, it follows that "how the Settlement Agreement was negotiated" is immaterial and irrelevant and, thus, not subject to discovery. The trial court, therefore, correctly denied the request for discovery.

Affirmed.

Judge WALKER concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

This appeal presents two issues for consideration. The majority opinion found that because it affirmed the second issue upholding the denial of a credit to Chase Manhattan and First Union, the first issue of " 'how the Settlement Agreement was negotiated' is immaterial and irrelevant." Because I disagree with the majority's holding that affirms the denial of credit, I also address the issue of whether the Settlement Agreement was a valid and binding compromise and settlement, or was it an "arrangement" designed to alleviate the malefactors of any liability and provide Knight Publishing with a double recovery.

At the outset, it should be noted that in their appeal, Chase Manhattan and First Union do not attempting to re-litigate issues which have already been decided by this Court. Rather, Chase Manhattan and First Union request this Court to act in equity, utilizing principles of fairness and justice. Specifically, Chase Manhattan and First Union ask this Court to grant them a credit equal to the monies Knight Publishing received through its Settlement Agreement with Graphic Images, Graphic Preparation, Conbraco, the malefactors and other sources. Chase Manhattan and First Union argue this offset is a fair compromise because the Settlement Agreement was "an attempt to recover [an] amount which [Knight Publishing] is not legally entitled to recover, while eliminating the Banks' ability to recover their own statutorily imposed losses from the actual perpe-

trators of the fraud." I believe, however, that the power of equity not need be considered in the case *sub judice* because the proper outcome is more aptly guided by concrete principles of law.

First, Chase Manhattan and First Union argue that the Settlement Agreement is inequitable because it allows Knight Publishing to recover monies for which it is not legally entitled to recover, while, at the same time, eliminating the ability of Chase Manhattan and First Union to recover their own losses from the actual perpetrators of the fraud. Chase Manhattan and First Union support this argument by noting that the Settlement Agreement was structured in such a manner as to grant Knight Publishing recovery for only the time-barred checks—that is, the checks prior to 19 June 1989. Chase Manhattan and First Union note that if the Settlement Agreement included the checks at issue in their case (the post 19 June 1989 checks), they would be entitled to a credit as a matter of law. Therefore, according to Chase Manhattan and First Union, Knight Publishing "conveniently" left these checks out of the Settlement Agreement to achieve a double recovery.

It is important to note that at the heart of Chase Manhattan and First Union's argument is the fact that the Settlement Agreement corresponded to claims that Chase Manhattan and First Union conclude were barred by the statute of limitations. Chase Manhattan and First Union support their conclusion by noting that a fraud claim's three year statute of limitations begins to run from the date when the fraud should have been discovered in the exercise of ordinary care. *See Shepherd v. Shepherd*, 57 N.C. App. 680, 682, 292 S.E.2d 169, 170 (1982). According to Chase Manhattan and First Union, since Knight Publishing's own internal investigation "conclude[d]" that Knight Publishing "should have known" about the embezzlement scheme early in its inception, Knight Publishing's fraud claim against the malefactors was time barred.

Chase Manhattan and First Union also argue that the Settlement Agreement was more form than substance. They support this argument with numerous conclusory and speculative theories. For example, they state the Settlement Agreement may in reality be an arrangement whereby: (1) Conbraco can purchase 100% ownership of Performance Printing for only $625,000, while, at the same time, ridding itself of two criminal directors; (2) Rawlings and Moore can absolve themselves of any financial liability by settling the claim and using the proceeds from the sale of their stock to pay off Knight Publishing; and (3) Knight Publishing receives the $625,000 "bird in

the hand," rather than a significantly larger sum that they may be awarded in the future.

Although the "conclusions" drawn by Chase Manhattan and First Union may in fact be true, they have little import in the case *sub judice*. It is well settled that "an agreement to compromise and settle disputed matters is valid and binding." *York v. Westall*, 143 N.C. 276, 277, 55 S.E. 724, 725 (1906). Indeed, the law favors the avoidance of litigation, and a compromise made in good faith "will be sustained as not only based upon a sufficient consideration but upon the highest consideration of public policy as well . . . ." *Id.* Moreover, the agreement will be upheld without any serious regard to the merits of the controversy or the character or validity of the claims. *See id.*; *Bohannon v. Trotman*, 214 N.C. 706, 721, 200 S.E. 852, 860 (1939). The real consideration is not found in the parties' sacrifice of rights, but in the bare fact that they have settled the dispute. *See York*, 143 N.C. at 277, 55 S.E. at 725. Thus:

> . . . no investigation into the character or relative value of the different claims involved will be entered into, . . . it being enough if the parties to the agreement thought at the time that there was a question between them—an actual controversy—without regard to what may afterwards turn out to have been an inequality of consideration.

*Id.*

Although the aforementioned rules apply directly to matters whereby one party contends that a compromise and settlement did not constitute adequate consideration, I would find that the underlying policy issues are nonetheless useful here. Therefore, unless there is evidence of bad faith, deception, fraud or mistake, the argument of Chase Manhattan and First Union that the Settlement Agreement was an unbargained for sham "arrangement" need not be addressed. *See Bohannon*, 214 N.C. at 721, 200 S.E. at 860 (holding that compromise settlements are binding absent evidence of deception, fraud or mistake).

In conducting this analysis, I accept that given the evidence available, it appears that Knight Publishing's fraud claims may in fact be time barred. Nonetheless, this first impression guesstimate is far from a legal certainty. Indeed, this guesstimate is based in part upon Knight Publishing's independent auditor's conclusions. These conclusions, however, are based upon only one person's opinions, and moreover are factual conclusions, not legal ones. Given this uncertainty, along

with the monetary and time costs involved with pursuing the fraud litigation, in my opinion, Knight Publishing and the malefactors entered into the Settlement Agreement in good faith and to avoid subsequent uncertainty and costs. Therefore, I believe the Settlement Agreement was a valid and binding compromise and settlement, not an "arrangement" designed to alleviate the malefactors of any liability and provide Knight Publishing with a double recovery.

The second issue presented forms the crux of my disagreement with the majority opinion. Chase Manhattan and First Union request this Court to apply equitable principles and thereby credit them for the monies received by Knight Publishing. They note that regardless of whether the Settlement Agreement was intended to provide Knight Publishing with a double recovery, it nonetheless does so provide. Chase Manhattan and First Union therefore argue that regardless of Knight Publishing's intent, they are entitled to be credited for the monies Knight Publishing received.

With respect to this aspect of the credit issue, it is uncontroverted that while Knight Publishing is entitled to fully recover its damages, Knight Publishing is not entitled to a "double recovery" for the same loss or injury. See *Markham v. Nationwide Mutual Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357, *disc. review denied*, 346 N.C. 281, 487 S.E.2d 551 (1997). As stated by our Supreme Court, "there can be but one recovery for the *same injury* or damage, . . . and further that, when merely a covenant not to sue, as distinguished from a release, is executed by the injured party to one joint tort-feasor for a consideration, the amount paid for such covenant will be held as a credit on the total recovery in actions against the other joint tort-feasors." *Holland v. Southern Public Utilities Co., Inc.*, 208 N.C. 289, 290, 180 S.E. 592, 593 (1935) (emphasis added). According to the Court, "the weight of both authority and reason is to the effect that *any* amount paid by *anybody* . . . for and on account of any injury or damage should be held for a credit on the total recovery in any action for the *same injury* or damage." *Id.* at 292, 180 S.E. at 593-94 (emphasis added). Although *Holland* involved joint tortfeasors, it has been quoted as controlling law in numerous types of damage cases. *See e.g.*, 25 C.J.S. Damages Sec. 99(2) at 1016 (footnotes omitted); *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 681, 384 S.E.2d 36, 47 (1989). Therefore, it is necessary to conduct a further examination into whether the monies Knight Publishing received as a result of the Settlement Agreement emanate from the "same injury" claimed in the case *sub judice*.

Knight Publishing contends that any monies received from the Settlement Agreement do not stem from the "same injury" at issue in the case *sub judice*. Indeed, Knight Publishing notes the explicit language of the Settlement Agreement which states that "[the] recovery was for a loss *separate and distinct* from the losses related to the checks improperly charged against [Knight Publishing's] bank accounts and deposited into the accounts of Graphic Image Color Prep"—that is, the Settlement Agreement compensated Knight Publishing for losses distinct from the losses related to the checks at issue here. This statement, however, is simply a conclusory assertion without legal tenability.

Knight Publishing has but one injury in this case—the money lost when Knight Publishing's improperly endorsed checks were unlawfully charged against its accounts. Although Chase Manhattan, First Union and the malefactors were independently liable, their actions were nonetheless concurrent and were it not for Chase Manhattan and First Union's unlawful acts, the malefactors' scheme would never have succeeded. Moreover, the injury created by the malefactors' scheme—Knight Publishing's monetary loss—is the same injury caused by the failure of Chase Manhattan and First Union to notice the malefactors' unlawful acts. Indeed, the amount of loss depended on the malefactors, not the bank; for if the malefactors embezzled $1 million, $5 million, or $10 million, Knight Publishing's loss would correspond to the injury created by the malefactors, not by any actions or non-actions taken by Chase Manhattan and First Union. Thus, Chase Manhattan and First Union's acts, or lack thereof, created no additional loss.

The Michigan Supreme Court, in *Riverview Co-op, Inc. v. First Nat. Bank & Trust Co. of Michigan*, 337 N.W.2d 225 (Mich. 1983), was asked to determine whether a defendant's recovery from both check converters and the bank from which the check cleared constituted a double recovery for the same injury. The court ruled that "[w]hile the converters and the bank are each, on the facts alleged, guilty of separate and distinct wrongdoing, [defendant] *suffered but a single injury*. Consequently, [defendant] may have but one satisfaction for that injury and may not have double redress." *Id.* at 231 (emphasis added). In making this ruling, the Michigan court used an election of remedies analysis, noting the election of remedies doctrine is a procedural rule designed not to prevent recourse of alternate remedies, but to prevent double redress for a single injury. *Id.* at 226-27. The court proceeded to state the elements essential for the doctrine to

apply: (1) the existence of two or more remedies; (2) the inconsistency between such remedies; and (3) a choice of one of them. *Id.* at 227. Under the facts of the case, the court stated that the first and third requirements were clearly met because defendant could have sued either the converter or the bank, and a choice was available as demonstrated by the fact that defendant sued the converter first and the bank second. *Id.* Lastly, the court noted that the remedies were not inconsistent because the defendant did not "ratify" or "affirm" the bank's payment to the converter by suing the converter first. *Id.* at 229.

The *Riverview* analysis is sound and accordingly should guide the outcome of the case *sub judice.* While the malefactors Chase Manhattan and First Union are each guilty of separate wrongdoing, Knight Publishing suffered but a single injury. "The remedies sought do not proceed from opposite and irreconcilable claims of right and are not inconsistent in the sense that a party may not logically pursue one remedy without renouncing the other." *Id.* at 231. Because there is but a "single injury," *Holland* requires this Court to hold that any monies Knight Publishing received through the Settlement Agreement or other arrangements relating to this matter must be credited against Knight Publishing's total recovery.

Having decided that Chase Manhattan and First Union are entitled to a credit, it should further be determined how much credit Chase Manhattan and First Union are entitled to from Knight Publishing's Settlement Agreement. Knight Publishing argues that its total damages amount to $2,023,890.48. Knight Publishing argues that even under the most optimistic theory supporting Chase Manhattan and First Union, it still will be unable to recover that amount. Therefore, according to Knight Publishing, there is no risk that it will be able to receive a double recovery. Knight Publishing, however, has failed to adequately substantiate the damages in excess of the Modified Final Order and Judgment described below.

Chase Manhattan and First Union, on the other hand, contend that Knight Publishing is legally entitled to recover only $1,244,011.18—the principal amount of non-time barred losses resulting from the embezzlement scheme. Chase Manhattan and First Union do concede that Knight Publishing is entitled to interest upon this amount.         .

In its Modified Final Order and Judgment, the trial court awarded Knight Publishing damages as follows: (1) $1,202,344.84 from Chase

Manhattan for lost principal; (2) $277,199.45 from Chase Manhattan as prejudgment interest; (3) $289,058.25 from Chase Manhattan as additional interest; and thereafter $296.47/day until the judgment is paid; (4) $41,666.34 from First Union for lost principal; (5) $8,901.75 from First Union for prejudgment interest; and (6) $9.13/day of interest until the judgment is paid.

Knight Publishing has already received $779,879.30 in damages. Specifically, Knight Publishing received $625,000 in damages from the Settlement Agreement, $68,223 from the malefactors personally, and $86,656.30 from Knight Publishing's insurance company. Again, these monies partly reimburse Knight Publishing for the "same injury" at issue in the case *sub judice*. Chase Manhattan and First Union are, therefore, entitled to have this money credited in its entirety, and therefore offset their liability under the Modified Final Order and Judgment.

For these reasons, I dissent with the majority opinion. In my opinion, this case should be remanded to the trial court with instructions to amend its Modified Final Order and Judgment to reflect the $779,879.30 credit due Chase Manhattan and First Union.