## MADISON RIVER LIVESTOCK CO., Appellant, *v.* OSLER
### et al., Respondents.

(No. 2,666.)

(Submitted June 7, 1909.   Decided June 14, 1909.)

[102 Pac. 325.]

*Livestock—Conditional Sales—Breach—Remedies—Election.*

Conditional Sale—Breach by Buyer—Seller's Remedies.
1.   On the breach of a conditional sale contract by the buyer, the seller may treat the contract as rescinded and retake the property; or retake the property and still treat the contract as in force, but broken by the buyer, and sue for damages occasioned by the breach; or waive the breach and insist upon payment for the property.

Same—Wrongful Retaking of Property—Effect.
2.   Where the retaking of personal property sold under a conditional sale, is wrongful, the action of the seller constitutes a violation of the contract, and the buyer may treat it as rescinded.

Same—Livestock—Rescission of Contract—Counterclaims—*Quantum Meruit.*
3.   Where livestock was sold conditionally and the seller wrongfully retook the same, the buyers could treat the contract as rescinded, and, on an action by the former to recover on a note evidencing the latter's indebtedness under the contract, maintain their counterclaim on the *quantum meruit,* for pasturage and labor performed in handling the stock.

Election of Remedies—Conclusiveness.
4.   An election between coexisting remedial rights which are inconsistent, when made with full knowledge of the facts, is irrevocable and conclusive, irrespective of intent, and constitutes a bar to any action based upon a remedial right inconsistent with that asserted by the election.

Conditional Sale—Livestock—Retaking of Property—Election—Effect.
5.   Where a seller of livestock which had been sold conditionally, elected to treat the contract of sale as rescinded because of an alleged breach of it by the buyer and retake the property, he elected to take it as he found it, and could not thereafter insist upon payment for animals which had died while in the buyer's possession.

Same—Livestock—Breach of Contract—Evidence.
6.   Defendants agreed to provide feed for livestock conditionally sold to them, to the amount of 400 tons annually.   The evidence showed that they had only 235 or 250 tons between the time the agreement was entered into and the time the animals were retaken by the seller. *Held,* that this fact alone did not constitute a breach of the contract on their part, so as to entitle plaintiff to reclaim the property.   A substantial compliance was sufficient, and if the amount of hay provided was ample to feed the stock during the time feeding was necessary (as the jury found), plaintiff's action in retaking it was wrongful.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by the Madison Livestock Company against Mary D. Osler, as administratrix of the estate of John Osler, deceased, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Mr. A. C. Gormley, Mr. Geo. R. Allen,* and *Mr. S. V. Stewart,* for Appellant.

Defendants' alleged counterclaims do not state facts sufficient to constitute a defense or any cause of action against the plaintiff. They have not pleaded a rescission of the contract. (*Cotter* v. *Butte & R. V. Smelting Co.,* 31 Mont. 134, 77 Pac. 509; *Miller* v. *Steen,* 34 Cal. 138; *Kelley* v. *Owens,* 120 Cal. 502, 47 Pac. 369; *Shively* v. *Semi-Tropic Land & Water Co.,* 99 Cal. 259, 33 Pac. 848; *Joyce* v. *Shafer,* 97 Cal. 335, 32 Pac. 320; *Forley* v. *Rich* (Utah), 99 Pac. 666; *Hanson* v. *Fox* (Cal.), 99 Pac. 489.) Nor have they pleaded a renunciation of it. (*Victor Safe & Lock Co.* v. *O'Neil,* 48 Wash. 176, 93 Pac. 216; 2 Mechem on Sales, 1087; 9 Cyc. 637; 8 Current Law, 1797; see, also, *Dingley* v. *Oler,* 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; *Smoot's Case,* 15 Wall. 36, 21 L. Ed. 107.)

Even, however, were the facts alleged sufficient to show a renunciation of the contract, so as to entitle the other party to sue, the rule of damages is that he is entitled to compensation, based on the ascertainment of what he would have suffered, by the continued breach of the other party, down to the time of complete performance. (2 Mechem on Sales, secs. 1088-1090; *Roehm* v. *Horst,* 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.) Each counterclaim must state a cause of action complete in itself. (*Babcock* v. *Maxwell,* 21 Mont. 512, 54 Pac. 943; *Power & Bros.* v. *Turner,* 37 Mont. 521, 97 Pac. 954.) Had the cattle been taken by the plaintiff against the will of the defendants, we still contend that this would not in any way affect the contract of sale or permit defendants to recover on their counterclaims. (1 Mechem on Sales, secs. 621-623; *Tufts* v. *D'Arcambal,* 85 Mich. 185, 24 Am. St. Rep. 79, 48 N. W. 497, 12 L. R. A. 446.)

The weight of authority is that, where personal property is sold and delivered to the vendee, under an agreement that title is to remain in the vendor until payment, the loss or destruction of the property while in the possession of the vendee before payment, without his fault, does not relieve him from the obligation to pay the price. (6 Am. & Eng. Ency. of Law, 455; 8 Current Law, 1819, 1820; *Osborn* v. *South Shore Lumber Co.,* 91 Wis. 526, 65 N. W. 184; *McMillan* v. *Fox,* 90 Wis. 173, 62 N. W. 1052; *La Valley* v. *Ravenna,* 78 Vt. 152, 112 Am. St. Rep. 898, 62 Atl. 47, 22 L. R. A., n. s., 97, 6 Am. & Eng. Ann. Cas. 684; *Burnley* v. *Tufts,* 66 Miss. 48, 14 Am. St. Rep. 540, 5 South. 627; *Tufts* v. *Griffin,* 107 N. C. 47, 22 Am. St. Rep. 863, 12 S. E. 68, 10 L. R. A. 526; *Jessup* v. *Fairbanks, Morse & Co.,* 38 Ind. App. 673, 78 N. E. 1050; *Vapereau* v. *Holcombe,* 122 Iowa, 406, 98 N. W. 279; *Phillips* v. *Hollenberg Music Co.,* 82 Ark. 9, 99 S. W. 1105; *Marion Mfg. Co.* v. *Buchanan,* 118 Tenn. 238, 99 S. W. 984, 8 L. R. A., n. s., 590; *Humeston* v. *Cherry,* 23 Hun (N. Y.), 141.)

*Mr. Geo. H. Stanton,* and *Mr. J. A. McDonough,* for Respondents.

"The law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them, and an action by the same person founded on the sale and delivery of the same goods for the recovery of the price." (*Morris* v. *Rexford,* 18 N. Y. 552; *Third Nat. Bank* v. *Armstrong,* 25 Minn. 530; *Minneapolis Harvester Works* v. *Hally,* 27 Minn. 495, 8 N. W. 597; *Hine* v. *Roberts,* 48 Conn. 267, 40 Am. Rep. 170; *Parke & Lacy Co.* v. *White River Lumber Co.,* 101 Cal. 37, 35 Pac. 442; *Bailey* v. *Hervey,* 135 Mass. 174; *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353, 42 Pac. 435; *Seanor & Bierer* v. *McLaughlin,* 165 Pa. 150, 30 Atl. 717, 32 L. R. A. 467; *Loomis* v. *Bragg,* 50 Conn. 228, 47 Am. Rep. 638; *Campbell Printing Press & Mfg. Co.* v. *Henkle,* 19 D. C. 95; *Earle* v. *Robinson,* 91 Hun, 363, 36 N. Y. Supp. 178; 6 Am. & Eng. Ency. of Law, 480.)

Where one party to a contract is prevented from completing the contract within the time specified, by reason of the other party's neglect, failure or refusal to perform his part, he is not obliged to bring his action upon the contract to enforce payment, but may resort to the *quantum meruit* to obtain his compensation. (*Spaulding* v. *Coeur d'Alene Ry. & Nav. Co.*, 5 Idaho, 528, 51 Pac. 408; *Wolf* v. *Marsh*, 54 Cal. 228; *Thomas* v. *McManus*, 23 Ky. Law Rep. 837, 64 S. W. 446; *White* v. *Livingston*, 174 N. Y. 538, 66 N. E. 1118; *Jenson* v. *Lee*, 67 Kan. 539, 73 Pac. 72; *Brown* v. *Woodbury*, 183 Mass. 279, 67 N. E. 327; *Day* v. *Eisele*, 76 App. Div. 304, 78 N. Y. Supp. 396; *Wood* v. *Kaufman*, 135 Mich. 5, 97 N. W. 47; *Buck* v. *Pond*, 126 Wis. 382, 105 N. W. 909; *Angle-Wyoming Oil Fields* v. *Miller*, 216 Ill. 272, 74 N. E. 821; *William Butcher-Steel Works* v. *Atkinson*, 68 Ill. 421, 18 Am. Rep. 560; *Alcorn* v. *Harmonson*, 2 Blackf. 235; *Chance* v. *Commissioners of Clay Co.*, 5 Blackf. (Ind.) 441, 35 Am. Dec. 131; *Preston* v. *Whitney*, 23 Mich. 260; 9 Cyc. 603.)

The vendee, under an agreement that title shall remain in the vendor until payment, is relieved from further liability in case of loss or accidental destruction of the property. (6 Current Law, 1382; *Bishop* v. *Minderhout*, 128 Ala. 162, 86 Am. St. Rep. 134, 29 South. 11, 52 L. R. A. 395; *Swallow* v. *Emery*, 111 Mass. 355; 1 Benjamin on Sales, 400; see, also, *Randle* v. *Stone*, 77 Ga. 50; *Stone* v. *Waite*, 88 Ala. 599, 7 South. 117; *J. M. Arthur & Co.* v. *Blackman*, 63 Fed. 536.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On December 22, 1903, the Madison Livestock Company entered into a contract with the defendants for the conditional sale by the plaintiff company to the defendants of certain cattle, horses and harness. The contract provides that the cattle should be paid for at the rate of $32.50 per head; that the plaintiff should furnish certain supplies and money; that defendants should have possession of the property; that payment should be made by defendants in five years; and that the title to

the property should remain in the plaintiff until payment was fully made. The contract contains this provision: "And it is further agreed that if at any time the parties of the second part fail to comply with their part of this agreement, and the said party of the first part shall feel insecure, then the said party of the first part shall, on demand, have the quiet and peaceable possession of such cattle and stock." The defendants evidenced their indebtedness to the plaintiff by two promissory notes, the latter of which was secured by chattel mortgage. In the spring of 1904 the plaintiff, presumably assuming to act under the provision of the contract quoted above, took possession of the property, or rather such portion as was then in existence—fifty head of cattle having died in the meantime. While by the terms of the contract the purchase price was not to be paid until five years from December 22, 1903, one of the notes was made payable on demand, and the other was made payable one year after date. When the property was retaken by the plaintiff, credit was given upon one of the notes for $11,200, presumably the market value of the property retaken. In 1905 the plaintiff brought this action to enforce payment of the balance due on the first note and to foreclose the mortgage securing the second. To the complaint the defendants interposed an answer denying any indebtedness, setting forth the history of the transaction, and alleging that the defendants had fully performed all the terms of the contract by them to be performed, and that the retaking of the property by the plaintiff was wrongful and without the consent, and against the will, of defendants. The answer also contained three separate counterclaims—for hay fed to the stock by the defendants, for pasturage furnished by them, and for work and labor done in handling the property—all of which was alleged to have been furnished and done by the defendants at the special instance and request of plaintiff. There was a reply, which put in issue all the new matters set forth in the answer. Upon the trial the jury returned a verdict in favor of the defendants for $4,675, and judgment was entered thereon, from which judgment the plaintiff appeals. The

specifications of error relied upon raise but two questions: (1) Do the counterclaims state causes of action in favor of the defendants and against the plaintiff? (2) Was the plaintiff in any event entitled to recover the unpaid portion of the purchase price after crediting the value of the property retaken, or for the value of the stock which had died?

1. It is insisted that the hay and pasturage furnished were furnished and the work done was done under the contract of December 22, 1903, and the defendants cannot recover anything therefor. Apparently the hay and pasturage were furnished and the work was done under the contract in the first instance; and it is elementary that *under the contract* the defendants are not entitled to recover. But it is alleged in the answer that the plaintiff wrongfully took the property from the possession of the defendants, and the jury so found in a special finding. The plaintiff insists that the defendants breached the contract, but the evidence upon that is conflicting, and the jury found against it upon that issue. But, assuming that plaintiff's contention is correct, it then might have had any one of three remedies: (a) It might have treated the contract as rescinded or abrogated and have retaken the property; or (b) it might have retaken the property, but still treated the contract as in force but broken by the defendants, and brought an action for damages occasioned by the breach; or (c) it might have waived the breach and have insisted upon payment for the property. (8 Current Law, 1818; Williston on Sales, sec. 579; 1 Mechem on Sales, sec. 615.) Apparently the plaintiff, contending that the defendants had violated the contract, undertook to pursue the first of these remedies; but, having retaken the property wrongfully, as the jury found, what, if any, remedies were then available to defendants? The authorities are unanimous in holding that they might have successfully prosecuted an action in claim and delivery to recover the possession of the property. Since the jury found that the plaintiff's act in retaking the property was wrongful, such retaking constituted a violation of the terms of the contract, and, such being the case, the defendants might

likewise treat the contract as rescinded. (7 Am. & Eng. Ency. of Law, 2d ed., 124; 9 Cyc. 639.) The act of plaintiff in retaking the property under the circumstances as disclosed by this record and as found by the jury is treated by some courts and text-writers as amounting to a rescission of the contract, by others as a renunciation of the contract, and by others still as amounting to a determination to treat the transaction as "no sale," in which . event there would be a total failure of consideration; but by whatever term designated it amounts, in fact, to a complete abrogation of the contract, so far as plaintiff is concerned, and leaves the defendants free to likewise treat the contract as abrogated, or to pursue any other remedy allowed them by law. If, then, the contract was by these acts of the parties abrogated, there was not any consideration whatever for either note sued upon by the plaintiff. The defendants, having furnished their feed and pasturage for, and done their work upon, plaintiff's property, may maintain their several counterclaims upon the *quantum meruit.* (7 Am. & Eng. Ency. of Law, 2d ed., 152, and cases cited.)

2. Was the plaintiff entitled to recover for the value of the stock which was not retaken? It is insisted that the loss for the stock which died fell upon the purchasers. Whether it did or not is a much mooted question, but one which is not before us. As said above, if plaintiff deemed that the defendants had broken the contract, it had its election of remedies, and, having chosen the remedy which it would pursue, its choice became · irrevocable. Upon the plainest principles of justice it cannot retake the property, renounce the contract, and at the same time insist upon payment under the contract. (*Parke & Lacy Co.* v. *White River L. Co.,* 101 Cal. 37, 35 Pac. 442; *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353, 42 Pac. 435.) The rule is stated in 15 Cyc. 262, as follows: "An election once made, with knowledge of the facts, between coexisting remedial rights which are inconsistent, is irrevocable and conclusive, irrespective of intent, and constitutes an absolute bar to any action, suit, or proceeding based upon a remedial right inconsistent with that

asserted by the election, or to the maintenance of a defense founded on such inconsistent right"; and the authorities in support of the text are cited at length. Having elected to treat the contract as rescinded, the plaintiff also elected to take the property as it found it, and cannot now insist upon payment of any part of the contract price. Treating of a contract of this particular character, Mechem in his work on Sales, section 615, says: "He [the vendor] may treat the contract as rescinded upon the default of the buyer, and recover his goods. If he does this, he has no other remedy." In Williston on Sales, section 579, the author says: "If the seller exercises his right to reclaim the goods, it is generally held an election to rescind the contract, and thereafter an action for the price or any unsatisfied balance of it is not allowed." (See, also, 2 Current Law, 1588, note.)

It is urged by counsel for appellant, in effect, that there is not any evidence to support the finding that the retaking of the property by the plaintiff was wrongful. The contract contains this provision: "Said parties of the second part further agree   *   *   *   to make ample provisions for the care of said stock by erecting sheds, and providing food to the extent of 400 tons of hay annually." Assuming, as we may, that by this provision it was intended that the defendants should annually make ample provision for caring for the property by providing sufficient feed for such portion of the year during which feeding would be necessary, and that 400 tons of hay were deemed sufficient for that purpose, it can hardly be urged that the mere fact that the defendants had only 235 to 250 tons of hay to feed from December 22, 1903, until the following spring, constituted a breach of the contract, which of itself warranted the plaintiff in retaking possession of the property. The provision above set forth must be interpreted in the light of conditions prevailing here. During one winter a very small quantity of feed might be sufficient, while during another 400 tons of hay might be inadequate. But, if the 235 or 250 tons of hay which defendants had was sufficient prop-

erly to winter the stock during the remaining portion of the season of 1903 and 1904, after December 22, 1903, then it would be said that there was a substantial compliance with the above provision of the contract; and we think the evidence is sufficient to show that the hay which defendants fed to the stock practically completed the necessary feeding for that season. It must have been upon this theory that the jury found that plaintiff's act in retaking the stock in the spring of 1904 was wrongful.

We do not find any error in the record. The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.

