ROPER, Respondent, *v.* CATERPILLAR TRACTOR CO. et al., Defendants; UNITED STATES FIDELITY & GUARANTY CO., Appellant.

(No. 7,245.)

(Submitted September 27, 1934. Decided November 13, 1934.)

[37 Pac. (2d) 812.]

*Messrs. Miller, Elliot & Westervelt, Mr. Eugene R. John-*
*son,* of the Bar of Peoria, Illinois, and *Mr. Oscar C. Hauge,*
for Appellant, submitted an original and a reply brief;
*Mr. Hauge* argued the cause orally.

80

Mr. *Jesse L. Angstman* and *Messrs. Freeman, Thelen &*
*Freeman,* for Respondent, submitted a brief; *Mr. Ernest Abel,*
of Counsel, argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the
court.

This is an appeal from a judgment of the district court of
Hill county. The action is predicated upon an undertaking
given in a claim and delivery suit previously instituted by the
Caterpillar Tractor Company against C. C. Roper, respondent
here.

Roper is a rancher residing near Havre. In the years 1929,
1930, and 1931, he farmed extensive acreages in grain. His
wife, Mrs. E. L. Roper, resided in the city of Havre, where
she operated an office for the handling of real estate, insur-
ance, bonds, and loans. Many of the business transactions be-
tween her husband and the Caterpillar Tractor Company,
hereinafter designated tractor company, were conducted by
her. The essential facts of the case are as follows:

On April 6, 1929, the Havre Tractor & Equipment Company,
a dealer for the Caterpillar Tractor Company, sold a 1929
model 30 caterpillar tractor to Roper for the sum of $2,575.

A cash payment of $858.33 was made, and two notes were given for the unpaid balance. One of the notes was due October 1, 1929, and was in the amount of $858.34; the other note was due October 1, 1930, and was in the amount of $858.33. The Havre Company sold the second note of the series to the tractor company and assigned the contract to it. The latter company owned and held that note and the contract on the due date thereof—October 1, 1930—and at all times from the date of the assignment until the note was paid. It was over this note that the controversy arose. The note is by plaintiff alleged to have been a negotiable instrument.

The note due on October 1, 1929, passed into the hands of a third party; it appears that only $500 had been paid thereon at the time of the trial of the instant action, but that matter is of no importance here.

On September 18, 1930, thirteen days prior to the maturity date of the note held by the tractor company, Mrs. Roper, who was acting as agent for her husband, wrote that company that on account of crop failure they were without sufficient funds for living expenses from that source, and that the tractor company was at liberty to take the tractor if it could not extend the time of payment of the note until the following fall. There is nothing to indicate that the tractor company made any response to this ultimatum. At a somewhat later date, however, John J. O'Connor, collector for the tractor company, came to Montana and had several interviews with the Ropers. He met with Roper and Mr. Daggett, of the Havre Company, at the Fair Hotel in Havre about the middle of January, 1931. He made demand for payment, but Roper advised him that he could not pay; whereupon O'Connor asked for further security, which Roper refused. He testified that Roper said, "I am unable to pay," and that he refused to give security; that he further said, "It is not my custom to give security to anyone. If you don't like it, you can take the tractor."

O'Connor talked to Mrs. Roper about the middle of April at her office in Havre. He testified that she explained that although they had no money to pay the note at that time, they

wanted to pay it and were endeavoring to get the money by means of a bond issue then pending, and that they would finally pay the note from the proceeds of the bond issue. He further testified that she said, ''Well, if you cannot wait that length of time, there is nothing else to do except take the tractor.''

On March 31, 1931, Mrs. Roper wrote the Havre Company that it was impossible to make payment on the note, and explained the progress of the contemplated bond issue. She advised that unless further extension could be made, they should go and take the tractor.

About the middle of April, O'Connor had a conversation with Mrs. Roper, and she explained to him the details of the bond transaction, submitting to him a financial statement of the Ropers. This financial statement was prepared for use in floating the bond issue. It contained a prospectus of the project and a full statement of the financial holdings of the Ropers. Shortly before the 1st of June, O'Connor again talked to Mrs. Roper, who advised him that the bonding company had sixty days in which to sell the bonds. Upon that assurance and in the belief that the bonds would be sold, O'Connor agreed to extend the payment sixty days, or until July 25.

On July 25 O'Connor met Mrs. Roper and inquired as to the success of the bond issue. She advised him that the bond issue had failed, and that if the company must take the tractor back, it would have to do so. That afternoon O'Connor went to the Roper ranch and talked to Roper himself. Considerable conversation occurred at that time between the parties. Although they do not agree as to the statements made, it is apparent that some kind of demand for payment of the note was made and refused. O'Connor then demanded possession of the tractor. Roper advised him that he would not let him take the tractor without an officer. O'Connor proceeded to Havre and got the sheriff to return to the Roper ranch with him that afternoon. The sheriff had a certified copy of the conditional sale contract and made a formal demand for the

tractor. Refusing to acquiesce, Roper said that he would not give the tractor up without court papers.

Roper testified that he went to Havre that night and made arrangements with one Anderson, who was a witness in the case, to borrow money to pay the note. The 25th of July, 1931, was Saturday. On the next Monday morning—July 27 —O'Connor had a conversation with Mrs. Roper. The participants in this conversation do not agree as to what was said. O'Connor testified that Mrs. Roper offered $200 cash, $200 to be paid in October, and the balance the following year. He further testified that "at that time I told her how much of a payment I wanted her to make. I set the minimum at $400, and she refused to pay that."

Mrs. Roper testified that O'Connor demanded payment of the note with interest; that she finally told him she would pay it; that she asked him how much the interest figured up; that while he did some figuring, she started to write out a check; that she asked him if he had the note, and he said he did not have it; and that then "I asked him if the note was in the bank and he said it was not, it was in Peoria, Illinois, and I told him I couldn't pay him until the note was surrendered." She further testified that O'Connor became quite angry; that he said he would give her a receipt for the money, and that she responded that she did not want a receipt, that she wanted the note; that she then asked him to write for the note—that she had the money and he could have it when the note came. She also testified that she offered to put the money in the bank in Havre to be turned over on receipt of the note, and that O'Connor refused to allow that to be done.

O'Connor testified that he told Mrs. Roper that while he did not have the note, she could either pay it to him and take a receipt, or pay the money into court, or that she could pay it to Mr. Hauge, attorney for the tractor company. No payment was made, and no agreement reached. On the same day the tractor company, through its agent O'Connor and its attorney, instituted a claim and delivery action for the possession of the tractor. A telegram was introduced in evi-

dence, disclosing that Mrs. Roper wired the tractor company at 1:29 P. M. of that day. In this telegram it was stated that O'Connor demanded payment in full or return of the tractor; that he was unreasonable and would not listen to an offer of compromise; that he refused to submit an offer; and that respondent was willing to make partial payment and give security for the balance. In explanation of this telegram Mrs. Roper asserted that she had sent this wire at 1:29 A. M. instead of P. M. The papers in the claim and delivery suit were served on Roper on July 28.

Under date of July 31 the tractor company wrote a letter to a bank in Peoria, transmitting the note for collection, and directing that it be presented for payment at the Montana National Bank in Havre, and that the proceeds be remitted to the tractor company. Duplicates of this letter were sent to the Havre Tractor Company and to Roper. On August 3 Roper received the copy of this letter after banking hours. On the morning of August 4 he proceeded to the bank and inquired if the note had arrived. Upon being informed that it had not arrived, he deposited sufficient money to pay the note, and accepted a receipt from the bank. On August 6 the note arrived at the bank and was turned over to Roper.

In the meantime, and on the evening of August 3, the sheriff of Hill county proceeded to the Roper ranch, where he seized the tractor and removed it to Havre. On August 6, the same day that Roper received the note, he served and filed a demurrer in the claim and delivery action, and executed a redelivery bond. On August 7 the tractor was returned to the Roper ranch. On August 17 Roper's demurrer was overruled without argument, and he was given twenty days within which to answer. On September 2 the tractor company dismissed its action in claim and delivery, served notice of such dismissal on Roper's attorney, and paid him the $2.50 appearance fee as court costs. On February 15, 1932, Roper instituted this action against the tractor company and the United States Fidelity & Guaranty Company of Baltimore, Maryland, the surety upon the undertaking in the claim and delivery action.

The complaint in this action contained two causes of action. A demurrer was sustained to the first cause of action, and overruled as to the second. In due course answer and reply were filed, and the cause came to trial on the second cause of action. In this cause of action, hereinafter for convenience designated complaint, in addition to the formal allegations, it was alleged that on or about the first day of October, 1930, the tractor company entered into an agreement with Roper whereby it was agreed that it would extend the time of payment on the note from the due date, October 1, 1930, to on or about October 1, 1931; that the tractor company would not sue, molest, or trouble Roper with respect to the negotiable promissory note or indebtedness or demand payment thereof until Roper had harvested his 1931 wheat crop; that on or about July 27, 1931, the tractor company, in disregard of the agreement, demanded full payment of the note; that Roper offered to pay the same upon the production of the note; that the agent of the tractor company did not have the note in his possession; that the note was not in the state of Montana but in the state of Illinois; that although Roper was at all times between July 27 and August 7, 1931, ready, able, and willing to pay the note, he could not safely do so by reason of the inability of the tractor company to deliver the same to him upon payment thereof; that on August 3 Roper received the notice sent by the Peoria bank to the Havre bank after the latter bank had closed for business; that on the next day, as soon as the Havre bank opened, he deposited the full amount of the principal and interest due on the note in that bank for the benefit of the tractor company, and that the deposit was accepted by the bank; that on the sixth day of August the note was turned over to him by the bank; and that such payment was full payment of all the indebtedness due the tractor company by Roper on account of the note.

It was further alleged in the complaint that on the twenty-seventh day of July, the tractor company wrongfully, maliciously, fraudulently, recklessly, and oppressively instituted its action in claim and delivery, including an undertaking in claim and delivery, which latter undertaking was signed by

the United States Fidelity & Guaranty Company of Baltimore, and on August 3 caused the sheriff to seize the tractor at Roper's ranch, ten miles from Havre; that on the sixth day of August, Roper demanded the return of the tractor and gave to the sheriff a written undertaking for the redelivery thereof; that on August 7 the tractor was returned to the Roper ranch; that at that time it was not in as good condition as when taken; that it had been damaged by careless and negligent driving on the hard surface road between the Roper ranch and Havre; and that the damage to the tractor amounted to the sum of $800. The complaint also alleged damage by reason of the loss of the use of the tractor between the third and seventh days of August, 1931, both inclusive, and while the same was in the possession of the sheriff. This loss was alleged to have occurred by reason of the inability of Roper to harvest his crops without the use of the tractor. The allegations are lengthy and extensive, but the damages were alleged to be $3,500. It was also alleged that Roper was required to incur an attorney's fee of the reasonable value of $500, and that he expended $20 for a redelivery bond, making in all an aggregate demand for damages in the sum of $4,820.

Copies of the affidavit and undertaking on claim and delivery in the original action and of the conditional sale contract were attached to the complaint as exhibits. These instruments were in ordinary form. The contract contained the following provision: "Time, and each of the terms and conditions hereof, is expressly declared to be of the essence of this agreement."

The surety company answered, admitting the formal parts of the complaint. The material parts of the answer are to the effect that the note in question was negotiable; that the tractor was not wrongfully taken; that it was not in good condition when the sheriff took it; that it was returned to Roper in better condition than when taken; that the attorney's fee was not reasonably incurred or reasonable in amount; and that Roper was not damaged in any way. A formal reply was filed by Roper. No service of process was ever made on the tractor company.

The case proceeded to trial with the United States Fidelity & Guaranty Company as the only defendant. At the close of the case, the defendant surety company moved to strike from the record all the evidence as not binding on it, and that the court direct the jury to render a verdict in its favor. Both these motions were denied. The jury returned a general verdict in favor of the plaintiff and against the surety company in the sum of $1,220. In addition to the general verdict, three special interrogatories were submitted to the jury by the court. These interrogatories, with the answers thereto, are as follows:

"No. 1. Has the plaintiff established by a preponderance of the evidence that on July 27, 1931, the Caterpillar Tractor Company, through its agents, demanded payment of the note due October 1, 1930, and that at that time the plaintiff, through his agent, Mrs. Roper, offered to pay the full amount with interest then due on said note and to deposit said amount in any bank in Havre, Montana, and that the said Caterpillar Tractor Company, through its agent, then refused such offer without objection to the manner and character of such offer? Answer: Yes.

"No. 2. If you answer Interrogatory 1 in the affirmative, was this offer later withdrawn by substituting a different offer or otherwise? Answer: No.

"No. 3. Has plaintiff established by a preponderance of the evidence that the tractor taken on August 3, 1931, and returned on August 7, 1931, was not in as good condition when returned as when taken, reasonable wear and tear in taking it from and to plaintiff's ranch excepted? Answer: Yes."

Appellant has made and urges fifteen assignments of error. It is difficult and impractical to discuss these assignments singly. Appellant's attorneys recognized that fact in their very able and exhaustive brief, and so attempted to group the assignments. While their grouping did simplify the matter somewhat, nevertheless it seems to us that most of the assignments must be considered in one comprehensive discussion. Respondent recognized this fact, and counsel in their

brief discussed the case as a whole. A careful reading of the record leads us to the conclusion that the assignments of error really tender two major questions, the first of which is: Did the plaintiff state and prove a cause of action? The second question involves alleged errors occurring at the trial of the cause.

Appellant in its main brief really bases the demand for reversal on four major propositions, which are as follows: (a) That sureties are favorites of the law, and replevin or claim and delivery bonds are strictly construed in favor of the surety; (b) that the surety in this case was discharged before the institution of the present action; (c) that there was no breach of any of the conditions of the undertaking on claim and delivery; and (d) that even if the trial court is sustained in its ruling that there was a breach of appellant's bond, respondent is entitled only to nominal damages.

There is a rule to the effect that sureties are in a sense favorites of the law. (*Erickson* v. *Anderson,* 77 Mont. 517, 252 Pac. 299; *Bell* v. *Bruen,* 1 How. (U. S.) 169, 11 L. Ed. 89; *Danford* v. *Watkins,* 337 Ill. 222, 168 N. E. 912.) This principle does not preclude a recovery when the facts in the case are sufficient to show that, in spite of the principle, there is a cause of action, in that the provisions of the bond have been breached. (Sec. 8198, Rev. Codes 1921; *Smith* v. *Lovell,* 2 Mont. 332; *Erickson* v. *Anderson,* supra.)

There are many cases holding that compromise or settlement of the claim or issue out of which the claim and delivery action arose effects the discharge of both principal and sureties on the claim and delivery bond. (*Cook* v. *Fidelity & Deposit Co.,* (C. C. A.) 167 Fed. 95; *Ramsey* v. *Landry,* 78 N. H. 612, 102 Atl. 531; *Clements* v. *Dempsey,* 7 Pa. Super. Ct. 52; *Gage* v. *Allen,* 89 Wis. 98, 61 N. W. 361; *Moore* v. *Campbell,* 36 Vt. 361.) Both these propositions must be considered in the light of the evidence. The first one does not require extensive discussion. The record discloses that the defendant surety company was given the benefit of the principle involved in the fact that it was to be considered a favorite of the

90

law. The second proposition requires resort to the record. The ▮ facts here are to the effect that the claim and delivery suit was instituted; that later it was dismissed by the then plaintiff; and that the dismissal was not the result of any compromise or settlement reached between the parties. A compromise or settlement must of necessity partake of the elements of a contract. Indeed, it is a contract, and as such must require a meeting of minds. (*Gunn* v. *Fryberger*, 71 Okl. 170, 176 Pac. 248; *Armstrong* v. *Polakavetz*, 191 N. C. 731, 133 S. E. 16; *Evans* v. *Irby*, 100 Okl. 60, 227 Pac. 433.) In the record before us there is nothing to show that the minds of the parties ever reached any agreement on the matter of the dismissal. An agreement by a debtor to pay an amount admitted to be due is not a compromise. (*Isaacs* v. *Wishnick*, 136 Minn. 317, 162 N. W. 297.)

The fact is that Roper filed a demurrer while the case was ▮ pending in the court, and that the tractor company of its own volition dismissed the action before the time given Roper to file answer had expired. There is no evidence in the record to indicate that Roper solicited the dismissal, or that he agreed to it, or that the dismissal was the result of negotiations between the parties. Certainly the tractor company had the right to dismiss the action irrespective of the wishes of Roper. (Sec. 9317, Rev. Codes 1921; *Miller* v. *Northern Pac. Ry. Co.*, 30 Mont. 289, 76 Pac. 691.) Doubtless, the dismissal occurred as the result of the payment of the money due on the note into the bank, and the acceptance thereof by the tractor company; but there is nothing in the notice or demands, or in the payment, to bear out the contention that the parties agreed that the money should be paid in and the action discontinued.

The condition of the claim and delivery bond was that plaintiff should prosecute the action without delay and with effect for the return of the property; and that if return thereof be adjudged, for the payment to defendant of such sum as might for any cause be recovered against the plaintiff, not exceeding the amount of the bond. This court in the recent case of *Fergus Motor Co.* v. *Schott*, 95 Mont. 249, 26 Pac. (2d) 365,

considered a very similar proposition, and held that while there are decisions to the contrary, the authorities seem to be pretty well in accord with the doctrine that, if the plaintiff in an action for the possession of personal property secures temporary possession through the remedy of claim and delivery and then dismisses his action, the undertaking is breached, etc. The exhaustive and careful discussion of that point by this court in the *Fergus Motor Company Case* seems to us entirely controlling on the proposition that the surety was discharged before the institution of this action. (See, also, *Parrott* v. *Scott*, 6 Mont. 340, 12 Pac. 763.)

The proposition that there was no breach of any of the conditions of the undertaking on claim and delivery is controlled by the authority just cited on the question of the discharge. We must hold that there was a breach of the undertaking in the matter of the prosecution of the case.

The other major assignment of error is to the effect that plaintiff in this action is only entitled to nominal damages. Many cases from other states are cited by appellant on this point. Some of them are distinguishable and not in point here. The question, however, has been passed upon by this court; hence contrary decisions from other jurisdictions are not controlling. This matter was under consideration in the *Fergus Motor Company Case,* supra, where we recognized the rule that in case the action is not prosecuted with effect, or a nonsuit or dismissal occurs, the condition of the bond is broken, and the action lies for the damages sustained in an amount not exceeding the full penalty of the bond.

It seems clear to us that if the seizure of the tractor by the sheriff was unlawful in the first instance, then the resulting damage is only limited by the amount of the penalty designated in the bond. Appellant's contention that the damage, if any, must be nominal is not in accordance with the principle of law recognized by this court.

The respondent in his brief does not attempt to meet and argue at length all the principles invoked by appellant in its brief. He takes the position that a case was alleged and proved,

and that the judgment is correct. In doing this he immediately moves to the proposition that the provision in the conditional sale contract, to the effect that time was of the essence of the contract, was waived and avoided by appellant, and that it was not in effect on the twenty-fifth day of July, 1931, when the first demand for the return of the tractor was made by the agent, O'Connor. From this premise he reasons that the proposition of strict forfeiture reserved to the tractor company in the first instance having been waived, the principle could not subsequently be invoked without notice, and that therefore the tractor company was not in a position peremptorily to demand and take possession of the tractor on that day. It follows that if respondent's reasoning is right, then the seizure of the tractor was wrongful, and the tractor company was liable for whatever damages accrued by reason of such wrongful taking.

Appellant in its reply brief asserts that respondent's argument in the foregoing particular presents, for the first time in the supreme court, theories never suggested in the district court. We cannot agree with this statement. The record does not disclose that respondent, Roper, or his attorneys either in the pleadings or in the course of the trial actually defined in concrete form the legal effect of his pleadings and proof. The fact remains, however, that all the elements necessarily entering into the theory of respondent were contained in the pleadings and in the proof. The whole history of the transaction was set out in the complaint, and a copy of the contract was pleaded. The essential fact outstanding in both pleading and proof was the fact that the seizure of the tractor by the sheriff at the instigation of the tractor company was wrongful. Respondent may not have cited the authority upon which he relied or clearly defined the principle that he was seeking to invoke until he filed his brief in this court; but it does not follow that a new theory was evolved or tendered. His argument now merely summarizes and defines the effect of his allegation and his proof. He now says the conditional sale contract originally contained the provision that time was of the essence of the contract; that

by virtue of that provision the tractor company could have enforced strict forfeiture without notice the instant respondent failed to make payment within time; and that on the day after the 1st of October—the due date of the note—the tractor company could have refused payment and could have likewise seized the property. But respondent showed to the satisfaction of the court and the jury that the tractor company did not stand upon the time element, but from time to time made extensions, either directly or by implication, and thereby waived the element of time and the right to strict forfeiture without notice. In this connection it may be said that the evidence shows beyond doubt that the tractor company did either grant or suffer continuance; that it not only suffered postponements of payment, but refused to take the tractor upon several different occasions when respondent and his wife either in person or by letter advised it that it could do so. It seems manifest that during all the time from October 1, 1930, the due date of the note, to July 27, 1931, the tractor company was repeatedly demanding payment of the note, and was not only failing to assert a right to recover the tractor, but consistently refusing to adopt the suggestion of respondent and his wife that it take possession thereof.

This court has had occasion to consider the right of forfeiture under such a contract provision as the one now under consideration. In the case of *Suburban Homes Co.* v. *North,* 50 Mont. 108, 145 Pac. 2, 5, Ann. Cas. 1917C, 81, the matter was discussed at some length. There the court said: "It would seem, however, that where a forfeiture has been practically waived by partial payments by the vendee after the time prescribed, the vendor cannot then suddenly stop short and insist upon a forfeiture for the nonpayment of the arrears remaining unpaid, without any previous notice of his intention so to do if the arrears are not paid." Here there was no acceptance of partial payments, but we think that the extensions were equally effective in preventing the tractor company from stopping short in its repeated demands for payment, and suddenly and without

notice invoking forfeiture and demanding the return of the tractor. (*Suburban Homes Co.* v. *North,* supra; *Silfvast* v. *Asplund,* 93 Mont. 584, 20 Pac. (2d) 631; *Johnson* v. *Kaeser,* 196 Cal. 686, 239 Pac. 324; *Redd* v. *Garford Motor Truck Co.,* 205 Cal. 245, 270 Pac. 447; *Lindsey* v. *Butte,* 96 Cal. App. 465, 275 Pac. 525.)

In the case of *Madison River Livestock Co.* v. *Osler,* 39 Mont. 244, 102 Pac. 325, 326, 133 Am. St. Rep. 558, this court discussed the rights of a contract holder and the options available in a case similar to this. It there said: "Upon the plainest principles of justice it [plaintiff company] cannot retake the property, renounce the contract, and at the same time insist upon payment under the contract." ·

The evidence leads to the conclusion that the tractor company on the twenty-fifth day of July, 1931, was attempting to avail itself of a new and different remedy. It apparently had abandoned the idea of collecting the money by voluntary payment, and was resorting to the other right, the right to take the tractor. This, we think, it could not do in accordance with the principle laid down in the case of *Suburban Homes Co.* v. *North,* supra, without reasonable notice. Here we find that when the demand was made for the return of the tractor, Roper refused the demand; that on the same Saturday night he proceeded to Havre where he borrowed the money to make the delinquent payment; and that on the succeeding Monday morning Mrs. Roper tendered the money to the agent for the tractor company, but found that he did not have the note and was unable to deliver it upon payment. Assuming, as we must, that the time from Saturday afternoon until Monday morning was not an unreasonable time within which the Ropers could pay the note and prevent the forfeiture, we then come to the question whether or not the offer to pay, which was not consummated by reason of the inability of the agent to deliver the note, was in fact equivalent to the actual payment of the note in so far as it affected the right to take possession of the property. The tractor company cannot be heard to deny the authority of its agent. The whole record indicates that O'Connor was such

agent. It must not be forgotten that it is agreed by both sides that the note in question was a negotiable instrument, and, as such, was payable to the holder thereof. Upon payment, Roper was entitled to the surrender of the note; and it was not incumbent upon him to make payment to anyone not in possession of the note. (*Cornish* v. *Woolverton*, 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598; *Segrist* v. *Crabtree*, 131 U. S. 287, 9 Sup. Ct. 687, 33 L. Ed. 125; *Van Allen* v. *Francis*, 123 Cal. 474, 56 Pac. 339; 8 C. J. 581.) Mrs. Roper was not justified in paying the money either to O'Connor or to any other third person designated by him, or even to the tractor company, without the production of the note. Such payment would not have protected the Ropers. She would have paid it at her peril. (*Cornish* v. *Woolverton*, supra.)

The complaint contains the allegation that from the time of the offer to pay the note on July 27th until the note arrived in Havre and the amount due thereon was finally paid to the bank, Roper was ready, able, and willing to make payment, but was prevented from doing so by the tractor company. This fact was found by the jury in answer to a special interrogatory. It then becomes obvious that the tractor company was without right to seize the tractor without notice; that it made its demand in due form; that the tender was made within a reasonable time and continued in effect; that the seizure by the tractor company by means of the claim and delivery action and through the sheriff was illegal; and that such being the case, the surety on the undertaking in the claim and delivery action was liable for whatever damages occurred to the tractor during the unlawful possession of the sheriff, the limit of liability being the penalty of the undertaking, in this case $2,050. (*Fergus County Motor Co.* v. *Schott*, supra.)

Appellant attacks the judgment on the ground that it is not sustained by the evidence. It is only necessary for this court to say that the facts hereinbefore stated were detailed at the trial at great length, and that the jury by special interrogatories was required to pass upon the truth of the evidence ad-

duced. The jury found all the fact issues in favor of the Ropers. There was ample evidence before the jury, which, if believed, sustained the findings. In addition to the special findings, the jury rendered a general verdict in favor of the Ropers. There is no merit in the contention that the findings and verdict of the jury were without support in the evidence. The ▬ verdict of a jury will not be disturbed unless the evidence clearly preponderates against it. (*Heckaman* v. *Northern Pac. Ry. Co.*, 93 Mont. 363, 20 Pac. (2d) 258; *Harrington* v. *Mutual Life Ins. Co.*, 59 Mont. 261, 195 Pac. 1107; *Independent M. & C. Co.* v. *Aetna Life Ins. Co.*, 68 Mont. 152, 216 Pac. 1109; *Northwestern H. & S. Co.* v. *Winnett*, 67 Mont. 545, 216 Pac. 568.)

The errors occurring at the trial involve three propositions: ▬ The first one involved the right of the defendant surety company to introduce in evidence the financial statement made by the Ropers for the purpose of a proposed bond issue to obtain money to pay their debts, including the note in question. We are unable to see how this statement was of any evidentiary value or how it could have affected the issues in the case. The question was not, Could the Ropers pay the note? or, What is the reason that they could have paid it? The fact remains that they did not pay it; and by reason of the attempt to get the money through the bond issue, they induced the tractor company to postpone demand for payment and thereby waive the right of strict forfeiture. The failure to receive the prospectus and the financial statement in evidence did not constitute prejudicial error.

Appellant urges that it was prejudicial error to allow the ▬ witness Alvin Uhrhammer to testify as to his measurements of the tractor crank-shaft made during the trial, which occurred over two years after the return of the tractor to Roper. Appellant asserts that because the tractor had been used a very great deal after its return, the testimony was prejudicial. The witness testified that the crank-shaft was off or flat about .004½ of an inch on one end and .007 on the other. Objection was made to this testimony at the time it was offered.

After argument, the court admitted the testimony with the remark, "It is pretty remote, but the jury will understand." We find ourselves in agreement with the trial court that the time of the examination was remote. The testimony should have been excluded; but in view of the fact that the jury had evidence of the extensive use of the tractor and of the intervening repairs before it, we do not see how this item of evidence could have been of sufficient force to prejudice the appellant or to justify a reversal. (Sec. 9191, Rev. Codes 1921; *White* v. *Chicago etc. Ry. Co.*, 49 Mont. 419, 143 Pac. 561; *Russell* v. *Sunburst Ref. Co.*, 83 Mont. 452, 272 Pac. 998; compare *Olson* v. *City of Butte*, 86 Mont. 240, 283 Pac. 222, 70 A. L. R. 1352; *Dockins* v. *Dockins*, 82 Mont. 218, 266 Pac. 398.)

The other specification of error alleged to have occurred at the trial involves a reference by Roper's counsel to the seizure of another tractor. It appears from the pleadings and the evidence that on July 28, when the summons and other process were served on Roper, the sheriff took possession of the wrong tractor and moved it into Havre. Later he discovered the error and returned it to the Roper ranch, and on August 3 seized the tractor in question.

Plaintiff's complaint contained two causes of action, one for damages on account of the seizure of the wrong tractor, and the other for the damages occasioned by the seizure of the tractor really involved in the controversy. A demurrer was filed and sustained to the first cause of action. That cause of action went out of the suit. In the course of the trial reference was made by Roper's counsel to the seizure of the wrong tractor. Counsel for the tractor company objected to the remarks. The court warned counsel to desist, and the matter was dropped. No prejudicial error was committed in this respect.

Both parties advanced strenuous arguments as to the effect of the payment of the money due on the note into the bank during the pendency of the action, and the acceptance thereof by the tractor company. While these facts are enlightening, we do not think they are controlling.

After examining the record in the case and considering all assignments of error, we find that no prejudicial error was committed. The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.