DAVID G. KOGUT, Plaintiff v. JOANNE ROSENFELD, CPA, D/B/A JOANNE ROSENFELD, P.A., Defendant

No. COA02-264

(Filed 6 May 2003)

**Bankruptcy; Release— settlement and release—satisfaction— misrepresentation—professional negligence**

The trial court erred in a misrepresentation and professional negligence case by granting summary judgment in favor of defendant accountant even though plaintiff recovered similar damages from another party through a bankruptcy settlement and release, because: (1) a genuine issue of material fact exists as to the intended scope and effect of the bankruptcy order approving the release and settlement agreement; and (2) there

was not satisfaction, and the release and settlement agreement specifically stated that defendant was not released from any claims of plaintiff.

Judge TIMMONS-GOOSDON dissenting.

Appeal by plaintiff from an order and judgment entered 3 November 2001 by Judge W. Erwin Spainhour in Iredell County Superior Court. Heard in the Court of Appeals 13 November 2002.

*Fisher Law Firm, PLLC, by Shane T. Stutts for plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Frederick K. Sharpless and Eugene E. Lester, III for defendant-appellee.*

WYNN, Judge.

In this appeal, plaintiff, David G. Kogut, presents the following issue: Where plaintiff, through a bankruptcy settlement, releases one party from liability, are claims against another party barred by our decision in *Chemimetals Processing Inc. v. Schrimsher, et al.,* 140 N.C. App. 135, 535 S.E.2d 594 (2000). We hold that a genuine issue of material fact exists as to the intended scope and effect of the bankruptcy order approving a release and settlement agreement; accordingly, we reverse the trial court's grant of summary judgment in favor of defendant.

The underlying facts tend to show that plaintiff David G. Kogut and Aimee A. Toth were married until they divorced in 1996. During the marriage, Ms. Toth formed Capstar Corporation and served as president. Capstar borrowed money from NationsBank secured by collateral and personal guarantees from the couple.

Defendant, Joanne Rosenfeld, a certified public accountant, prepared personal tax returns for Dr. Kogut, Ms. Toth, and Dr. Kogut's medical practice, Iredell Digestive Disease Clinic. Ms. Rosenfeld also provided professional services to Capstar and was involved in the financial affairs of Capstar, including but not limited to the preparation of reports to NationsBank regarding the financial status of Capstar. After his divorce from Ms. Toth, Dr. Kogut terminated his professional relationship with Ms. Rosenfeld.

On 29 May 1997, Capstar filed for bankruptcy protection in the Western District of North Carolina under Chapter 11 of the Bankruptcy Code. To recover a substantial secured debt owed by

Capstar, NationsBank sued Capstar, Dr. Kogut, and Ms. Toth on the Capstar guarantees. That action resulted in a judgment, dated 2 September 1997, of $1,725,534.76 against Dr. Kogut.

On 19 September 1997, Dr. Kogut, through a wholly owned corporation, Acme Liquidation Company, paid his obligation under the guaranty to NationsBank. In turn, NationsBank assigned its notes to Dr. Kogut as well as its collateral securing the notes, the judgment confirming the award against Dr. Kogut, and claim against Capstar. Subsequently, Dr. Kogut brought an action against Ms. Rosenfeld alleging that she led him to believe that Capstar was profitable, and unfairly induced him to sign the NationsBank guaranty.

In the meantime, while a domestic equitable distribution action was pending between Dr. Kogut and Ms. Toth, Ms. Toth filed for bankruptcy protection in the Western District of North Carolina. In June 1998, Dr. Kogut, individually and through Acme Liquidation Company, brought an action against Ms. Toth in bankruptcy court to recover for investments he made in Capstar and for reimbursement on NationsBank guaranty. In September 1998, Ms. Toth removed the domestic equitable distribution action pending between Dr. Kogut and Ms. Toth to the bankruptcy court. Ms. Rosenfeld was not a party to either action.

On 16 May 2000, Dr. Kogut and Ms. Toth resolved their differences under a "Bankruptcy Order" decreeing the following: (1) incorporation of the terms of a "Release and Settlement Agreement" distributing assets and legal rights among Ms. Toth, Dr. Kogut and Acme Liquidation Company; (2) dismissal with prejudice of Dr. Kogut and Ms. Toth claims against each other; (3) an award to Dr. Kogut of $400,000.00 on the claim for equitable distribution; (4) entitlement to Dr. Kogut of his claim in the amount of $89,000.00; (5) denial of Dr. Kogut and Acme Liquidation Company claims in the amount of $2,305,088.29; and (6) an order discharging Ms. Toth and enjoining her creditors. The release awarded real property in North Carolina and South Carolina to Dr. Kogut, estimated to be worth in excess of 1.2 million dollars and dismissed all alimony and support claims with prejudice. Acme Liquidation Company retained its liens on the property and the amount of debt owed to it. The Order also provided "that the claims of Dr. Kogut and his Related Entities, . . . , which have been or might be asserted in the bankruptcy case of Capstar Manufacturing Company . . . pending in this Court, are hereby denied, and Kogut and his Related Entities are directed to withdraw any such claims with prejudice."

KOGUT v. ROSENFELD

[157 N.C. App. 487 (2003)]

As to Dr. Kogut's action against Ms. Rosenfeld, in 1999, he voluntarily dismissed that action but re-filed it in October 2000 alleging again that Ms. Rosenfeld led him to believe that Capstar was profitable, and that she unfairly induced him to sign the NationsBank guaranty. On 14 September 2001, Ms. Rosenfeld filed a motion for summary judgment. Prior to a hearing on the motion, Dr. Kogut dismissed his claims for constructive fraud and extortion, leaving his claims for misrepresentation and professional negligence before the trial court. On 7 November 2001, the trial court granted summary judgment in favor of Ms. Rosenfeld which read in pertinent part:

. . . .

After considering the materials of record, and the arguments and authorities urged upon by the parties, and after considering the decision in *Chemimetals Processing Inc. v. Schrimsher, et al.*, 140 N.C. App. 135, 535 S.E.2d 594 (2000), the court is of the opinion that there is no genuine issue as to any material fact and that the defendant's motion should be allowed.

. . . .

From this order, Dr. Kogut appeals.

In light of the facts of this case, the issue on appeal is whether our decision in *Chemimetals Processing Inc. v. Schrimsher, et al.*, 140 N.C. App. 135, 535 S.E.2d 594 (2000) bars, as a matter of law, Dr. Kogut from recovering damages against Ms. Rosenfeld because he recovered similar damages from Ms. Toth through a bankruptcy settlement and release? We answer, no.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). The party moving for summary judgment must "clearly demonstrate the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 324 (1999). In reviewing a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing the motion. *Id.*

In granting summary judgment, the trial court relied on *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 535

S.E.2d 594 (2000). In *Chemimetals*, the plaintiff sued its corporate president for breach of contract, breach of fiduciary duty and unfair and deceptive trade practices arising from the president's scheme to divert money to himself. Before the case proceeded to trial, the parties entered into a "Settlement Agreement and Mutual Release." In consideration for the settlement, plaintiff dismissed the complaint. Plaintiff then initiated a second lawsuit against the board of·directors and accountants alleging that they conspired to present financial statements which overstated the assets for three fiscal years. *Id.* at 137-38, 535 S.E.2d at 596. The trial court entered summary judgment for the board of directors and accountants.

The plaintiff in *Chemimetals* appealed the order of summary judgment arguing that the release entered in the first action did not preclude the claims brought in the second action against the board of directors and accountants. This Court acknowledged that although the plain terms of the release did not bar the second action, the plaintiff could not assert a second action against the board of directors and accountants to collect for the same losses recovered in the first action against its president. *Id.* at 139, 535 S.E.2d at 597. Our Court asserted that

> [The plaintiff] has suffered but one injury in this case—monetary loss due to the purported diversion of profits and labor from [the plaintiff] by [the plaintiff's president]. Under the facts as alleged by [the plaintiff], all actions in the course of events leading to financial demise of [the company] were concurrent. [The plaintiff's] monetary loss, which was the injury created by [the president's] scheme, is the same injury caused by the alleged failure of the board of directors and CPAs to notice [the president's] unlawful acts. That only one injury occurred is in no way altered by the fact that the board of directors and CPAs may have been guilty of separate wrongdoing.

*Id.* The *Chemimetals* court held that by entering into the settlement agreement in the first action, plaintiff had been compensated for the company's decline in income and could not seek to recover for those same losses from the board of directors and CPAs. *Id.*

While the facts resemble the facts in *Chemimetals*, we must hold that summary judgment is precluded in this case because, unlike *Chemimetals*, the record in this case shows a genuine issue of material fact exists regarding the intended scope and effect of the bankruptcy order.

**KOGUT v. ROSENFELD**

[157 N.C. App. 487 (2003)]

In this case, the bankruptcy court decided the parties' equitable distribution action, as well as Dr. Kogut's tort action against Ms. Toth. When the court subsequently entered a bankruptcy order resolving all issues between the parties, that order did not specify which part of the award was intended to make Dr. Kogut whole for the losses he attributed to Ms. Toth in his tort action. The monetary and property awards received by Dr. Kogut appear to be related primarily to the equitable distribution award. In addition, the bankruptcy order also denied Dr. Kogut's claims asserted in the Capstar Manufacturing Company bankruptcy case and directed him to withdraw any such claims with prejudice.

Moreover, we further distinguish *Chemimetals* to point out that in that case the plaintiff recovered damages that were intended to make it whole. Thus, *Chemimetals* did not abrogate the general rule that absent a general release from liability, a plaintiff may obtain separate judgments against each of several wrongdoers if those judgments equal only one satisfaction or full compensation for his injury. *See* N.C. Gen. Stat. § 1B-4 (2001); *see also* Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 22.90, at 451 (2nd ed. 1999). Accordingly, any portion of the award that Dr. Kogut received as reimbursement of his losses would not prevent him from recovering the remainder of those losses from Ms. Rosenfeld because (1) there was not satisfaction, and (2) the Release and Settlement Agreement specifically stated that Ms. Rosenfeld was not released from any claims of Dr. Kogut. *See Bowen v. Insurance Co.*, 270 N.C. 486, 155 S.E.2d 238 (1967).

In sum, since we hold that a genuine issue of material fact exists as to the intended scope and effect of the release agreement between Dr. Kogut and Ms. Toth incorporated into the bankruptcy order, we must further hold that the trial court's order of summary judgment is,

Reversed.

Judge HUNTER concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

For the reasons stated in *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 535 S.E.2d 594 (2000), and in reliance on the authorities cited therein, I respectfully dissent.

In reversing the order of summary judgment, the majority also relies on *Chemimetals*. While I agree with the majority's assessment that the bankruptcy court order did not specify which part of the award was intended to make Kogut whole for losses he attributed to Toth in his tort action, Acme, the company formed by Kogut to hold the bank assignments and collect payment on the notes, was clearly part of the release agreement. It is clear that the release allowed Acme to retain liens, in excess of $1,000,000.00, against property located in South Carolina and North Carolina. Acme had no standing in the Kogut-Toth equitable distribution proceeding, and proceeded against Toth in the bankruptcy adversarial proceeding in her capacity as a corporate officer of Capstar.

In the case *sub judice*, Kogut brought virtually identical actions against Toth and Rosenfeld seeking recovery for his losses arising from Capstar's demise due to their alleged misrepresentation and negligence. As in the case of *Chemimetals*, Kogut cannot bring this action against Rosenfeld, despite any limiting language in the release with Toth or any alleged separate wrongdoing by Rosenfeld. Kogut has suffered but one injury as a result of signing the Bank guaranty allegedly induced by Toth. The one injury is in no way changed by Rosenfeld's alleged participation or furtherance of Toth's misdeeds.

Accordingly, the trial court did not err in granting an order of summary judgment in favor of Rosenfeld.