An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1329

NORTH CAROLINA COURT OF APPEALS

Filed:  29 July 2014

PAUL D. JACOKES,
    Petitioner

    v.                           Pender County
                                      No. 11 CVS 1081

APM BUILDERS, INC.,
    Respondent


Appeal by petitioner from orders entered 22 July 2013 and 12 August 2013 by Judge Paul L. Jones in Pender County Superior Court.  Heard in the Court of Appeals 7 April 2014.

*Paul D. Jacokes, pro se, for petitioner-appellant.*

*Kenneth G. Ording, for respondent-appellee.*


CALABRIA, Judge.

Paul D. Jacokes ("Jacokes") appeals from an order granting APM Builders, Inc.'s ("APM") motion to allow set off from judgment and an order denying the motion to reconsider the order granting set off from judgment.  We affirm.

In 2007, Jacokes and APM entered into a contract for the construction of a house in Surf City, North Carolina ("the residence").  Mid-Atlantic Roofing & Sheet Metal, LLC ("Mid-

Atlantic"), APM's roofing subcontractor, installed a standing-seam metal roof on the residence. The roof leaked, causing damage to the interior and structural components of the residence. Since Jacokes was not compensated for the damages, which exceeded $80,000, he sought arbitration of the dispute according to a provision in the contract requiring arbitration when parties are unable to resolve their disputes.

In January 2012, Jacokes filed a motion to compel arbitration of the dispute with APM arising from the rainwater intrusions into the residence. In June 2012, the arbitrator awarded Jacokes $40,006.64 plus interest ("the arbitration award" or "the award"). The award was based upon a finding regarding the defective installation of the roof, which reduced the useful life of the roof by 66%. The trial court subsequently confirmed and entered judgment in favor of Jacokes and against APM for $41,399.90 ("the judgment").

In August 2012, Jacokes filed a complaint against Mid-Atlantic, alleging negligence and unfair trade practices, and sought reimbursement for damages in excess of $10,000. The parties, in that case, entered into a settlement agreement in May 2013 in which Mid-Atlantic's insurance company agreed to reimburse Jacokes $33,000 on behalf of Mid-Atlantic. Jacokes

subsequently filed a voluntary dismissal with prejudice against Mid-Atlantic.

APM filed articles of dissolution in February 2013 without satisfying the judgment. In April 2013, a portion of the judgment was satisfied pursuant to a writ of execution from the proceeds of the sale of a truck and trailer titled in APM's name.

In June 2013, APM filed a motion to allow set off against the judgment for the amount of Mid-Atlantic's settlement payment. After a hearing, the trial court granted APM's motion and ordered a set off in the amount of $33,000. As a result, APM's outstanding balance on the judgment was satisfied. Jacokes also filed a motion to reconsider the order granting the set off from judgment, with a supporting affidavit stating his total loss from the roof exceeded $80,000 but that he had only received a total of $48,672.50. The trial court denied Jacokes' motion to reconsider the order granting set off from judgment.

Jacokes filed notice of appeal for both orders. However, Jacokes only presents arguments regarding the order granting APM's motion for set off and makes no argument before this Court regarding the motion to reconsider the order granting set off from judgment. Therefore, any argument concerning that order

has been abandoned. *See* N.C. R. App. P. 28(b)(6) (2013) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

Jacokes' sole argument is that the trial court erred by granting APM's motion to allow set off for the amount of Mid-Atlantic's settlement payment because it was improperly credited towards the judgment. We disagree.

A trial court may "relieve a party or his legal representative from a final judgment, order, or proceeding" if the judgment has been "satisfied, released, or discharged, . . . or it is no longer equitable that the judgment should have prospective application[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(5) (2013). "[A] motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and appellate review is limited to determining whether the court abused its discretion." *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E.2d 532, 541 (1975).

As an initial matter, Jacokes cites several federal cases to support both an alternative standard of review and his substantive arguments. However, in matters of North Carolina law, our Courts "are not bound by federal court rulings, so long

as our decision comports with the United States Constitution." *Libertarian Party of North Carolina v. State*, 365 N.C. 41, 47, 707 S.E.2d 199, 203 (2011) (citation omitted). Because there is relevant North Carolina authority available, we find Jacokes' reliance on federal cases unpersuasive.

In North Carolina, the "one satisfaction" rule is set forth in *Holland v. S. Pub. Utils.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935) ("[A]ny amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the total recovery in any action for the same injury or damage."). "Where '[t]here is one injury, [there is] still only one recovery.'" *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 563, 613 S.E.2d 503, 509 (2005) (quoting *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997)).

Although Jacokes cites the one satisfaction rule in his brief, he appears to misunderstand the meaning of one recovery. According to Jacokes, one recovery is only synonymous with "full recovery," when the plaintiff "at the end of the day" is made whole. To support his position, Jacokes cites *Kogut v. Rosenfeld*, 157 N.C. App. 487, 579 S.E.2d 400 (2003).

In *Kogut*, the plaintiff signed personal guaranties securing bank loans made to a corporation formed by his wife. *Id*. at 488, 579 S.E.2d at 401. The defendant, Rosenfeld, was a certified public accountant who provided professional services for both the plaintiff and the corporation. *Id*. After the plaintiff and his wife divorced, the corporation filed for bankruptcy, and the plaintiff was held partially liable for the corporation's debt. *Id*. at 488-89, 579 S.E.2d at 401. The plaintiff filed a complaint against his wife seeking to recover his investments in the corporation and a reimbursement on the guaranty. *Id*. at 489, 579 S.E.2d at 401. The claims were settled in conjunction with a claim for equitable distribution. *Id*. The plaintiff subsequently filed a complaint against the defendant, alleging that she led him to believe the corporation was profitable and unfairly induced him to sign the guaranty. *Id*. at 490, 579 S.E.2d at 402. The trial court granted summary judgment in favor of the defendant. *Id*. This Court held that there was a genuine issue of material fact as to the intended scope and effect of the settlement and release agreement between the plaintiff and his wife. *Id*. at 491, 579 S.E.2d at 403. In addition, the plaintiff was not prevented from recovering the remainder of his losses from the defendant because there was no

satisfaction and the settlement agreement specifically stated that the defendant was not released from the plaintiff's claims. *Id.* at 492, 579 S.E.2d at 403.

Jacokes also believes the material facts in the instant case are indistinguishable from *Knight Publ'g Co. v. Chase Manhattan Bank*, 137 N.C. App. 27, 527 S.E.2d 80 (2000). In *Knight*, two part-owners of a graphic design business sent fraudulent invoices to the plaintiff for supplies they never received. *Id.* at 28, 527 S.E.2d at 81. Plaintiff paid the invoices by checks that were deposited. *Id.* After the plaintiff learned of the fraudulent invoice scheme, it filed a complaint against the two banks that had honored the checks, demanding reimbursement for its losses in the graphic design business' embezzlement operation. *Id.* at 29, 527 S.E.2d at 82. The trial court entered an order awarding the plaintiff damages for its non-time barred losses. *Id.* After filing the complaint, the plaintiff settled claims regarding older checks that were already time barred with the graphic design business and the individuals responsible for the fraud. *Id.* at 30, 527 S.E.2d at 82. The banks argued that they were entitled to credits on the judgment corresponding to the settlement agreement. *Id.* The trial court denied the banks' motion for

credit.  *Id.*, 537 S.E.2d at 82-83.  This Court noted that the record did not support a conclusion that the plaintiff would be receiving payments in excess of those to which it was equitably entitled, and held that the trial court did not abuse its discretion in denying the banks' motion for credit.  *Id.* at 30-31, 527 S.E.2d at 83.

Jacokes argues that both *Kogut* and *Knight* are indistinguishable from the instant case.  However, we find that *Baity v. Brewer*, 122 N.C. App. 645, 470 S.E.2d 836 (1996), more closely resembles the facts of the instant case.

In *Baity*, the plaintiff filed a complaint against two defendants alleging negligence for injuries she suffered in an automobile collision.  *Id.* at 646, 470 S.E.2d at 837.  Prior to trial, the plaintiff settled with one of the defendants for an amount equal to the limits of his insurance policy, and signed a release with that defendant releasing him from liability.  *Id.* At trial, the remaining defendant was found negligent.  *Id.*  The trial court denied the remaining defendant's motion to credit the amount of the settlement towards the judgment against her. *Id.*  This Court cited *Holland* in reversing the trial court's decision to deny the motion for credit.  *Id.* at 647, 470 S.E.2d at 838.

In the instant case, Jacokes is correct that he "may obtain separate judgments against each of several wrongdoers" in order to receive full compensation for his injury. *Kogut*, 157 N.C. App. at 492, 579 S.E.2d at 403. However, Jacokes is mistaken that the judgment does not represent the full amount of his injury. The arbitrator specifically found that the major water damage to the interior of the home was caused by windblown rain under and over the exterior doors of the residence. The arbitrator also found that Jacokes had filed a complaint against and entered into a settlement agreement with the door manufacturer, which concerned, *inter alia*, a claim for the cost of repair or replacement of the residence's hardwood floors.

The arbitrator awarded Jacokes $40,006.64 plus interest based on Jacokes' claims regarding the replacement of the roof and the repair and painting of the siding and trim damaged in the roof replacement. The arbitration award did not include damages for the water damage to the floors and interior of the residence because the arbitrator found Jacokes had already settled those claims in his action against the door manufacturer. Since the settlement agreement with the door manufacturer included the allegations specifically regarding Jackokes' hardwood floors, his claims for the interior water

damage were barred. Jacokes did not appeal the arbitration award, but confirmed it in a judgment against APM.

Jacokes argues that because he incurred damages in excess of $80,000 as a result of the defective roof, he will not realize a full recovery even if he is able to recover the remaining balance of the settlement from APM. He claims that despite the judgment, he is entitled to seek the remaining portion of his out-of-pocket costs from other parties, including Mid-Atlantic. He also contends that the settlement agreement with Mid-Atlantic constituted compensation for interior repair costs, not for the roof replacement costs. However, Jacokes is entitled to only one satisfaction for the damages he sustained. *Holland*, 208 N.C. at 292, 180 S.E. at 593-94. The arbitrator had previously determined that Jacokes had been compensated for the interior repairs in his settlement with the door manufacturer. While the settlement agreement between Jacokes and Mid-Atlantic indicates that the agreement does not prevent Jacokes "from pursuing recovery on a judgment or any other claim relating to the Work against APM[,]" the damages to the residence were confirmed in the unchallenged arbitration award. Jacokes' recovery from Mid-Atlantic satisfies his judgment against APM. Jacokes' argument is without merit.

Because we hold that the trial court did not abuse its discretion in granting APM's motion for set off, we need not discuss Jacokes' remaining arguments. However, it is important that we briefly include a note on the lack of professionalism in both parties' briefs. Specifically, while counsel for APM claims that Jacokes was "disrespectful" in presenting an argument regarding the trial court's conduct during the hearing, counsel's emotional response to both of Jacokes' remaining claims is an instance of the pot calling the kettle black.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.

Report per Rule 30(e).